711 So.2d 1135 (1998)
DENI ASSOCIATES OF FLORIDA, INC., Petitioner,
v.
STATE FARM FIRE & CASUALTY INSURANCE COMPANY, Respondent.
E.C. FOGG, III, et al., Petitioners,
v.
FLORIDA FARM BUREAU MUTUAL INSURANCE COMPANY, Respondent.
Nos. 89115, 89300.
Supreme Court of Florida.
January 29, 1998.
Rehearing Denied June 11, 1998.
*1136 Scott A. Mager of Kluger, Peretz, Kaplan & Berlin, P.A., Fort Lauderdale, Gary S. Gaffney of the Law Offices of Gary S. Gaffney, Davie, for Petitioner Deni Associates of Florida, Inc.
Cromwell A. Anderson of Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, for Petitioners E.C. Fogg, III, et al.
Elizabeth K. Russo and Kimberly L. Boldt of Elizabeth Russo & Associates, P.A., Miami, and Green & Ackerman, P.A., Fort Lauderdale, for Respondent State Farm Fire & Casualty Insurance Company.
Bonita Kneeland Brown of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., for Respondent Florida Farm Bureau Mutual Insurance Company.
David K. Miller of Broad and Cassel, Tallahassee, and Samantha Boge of Stowell Anton & Kramer, Tallahassee, for Amicus Curiae Associated Builders and Contractors, Inc.
Daniel Y. Sumner and Elizabeth G. Arthur of the Florida Department of Insurance, Tallahassee, for Amicus Curiae The Florida Department of Insurance.
Raymond T. Elligett, Jr. and Amy S. Farrior of Schropp, Buell & Elligett, P.A., Tampa, for Amicus Curiae Academy of Florida Trial Lawyers.
Betsy E. Gallagher of Gallagher & Howard, Tampa, for Amicus Curiae Florida Defense Lawyers Association.
Ronald L. Kammer of Hinshaw & Culbertson, Miami; Laura A. Foggan and John C. Yang of Wiley, Rein & Fielding, Washington, D.C., for Amicus Curiae Insurance Environmental Litigation Association.
Keith E. Hope of Keith Hope, P.A., Key Biscayne, for Amicus Curiae the Florida Fruit & Vegetable Association.
Joseph J. Gleason, Lakeland, for Amicus Curiae Florida Citrus Mutual.
GRIMES, Senior Justice.
We review State Farm Fire & Casualty Insurance Co. v. Deni Associates of Florida, Inc., 678 So.2d 397, 404 (Fla. 4th DCA 1996), in which the court certified the following as a question of great public importance:
Where an ambiguity is shown to exist in a CGL policy, is the court limited to resolving the ambiguity in favor of coverage, or may the court apply the doctrine of reasonable expectations of the insured to resolve ambiguities in CGL policies?
We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution. In addressing this question, the court below decided two unrelated cases which involved the same issue.
Deni Associates of Florida, Inc. (Deni), an architectural engineering firm, was one of several tenants in a two-story commercial building. In the course of moving equipment in the building, ammonia was accidentally spilled from a blueprint machine. Responding to a 911 call, the fire department evacuated the building, set up ventilators, and broke windows in order to expedite ventilation.
*1137 The building was turned back over to the building manager six hours later. Thereafter, claims were made against Deni for personal injuries sustained from inhalation of the ammonia fumes. Claims were also made by several cotenants seeking reimbursement for loss of income due to evacuation of the building. Deni carried a comprehensive general liability (CGL) policy with State Farm Fire and Casualty Insurance Company.
E.C. Fogg and others, doing business as the partnership of Land-O-Sun Groves (Land-O-Sun), contracted with Colony Services, Inc. (Colony) to aerially spray chemical insecticide furnished by Land-O-Sun on its citrus groves. In the course of spraying, the helicopter splashed insecticide on two men who were standing on adjacent property. The two men subsequently sued Land-O-Sun and Colony for injuries allegedly suffered as a result of being exposed to the insecticide. Land-O-Sun carried a CGL policy with Florida Farm Bureau Mutual Insurance Company.
In both instances, the insurance companies disputed coverage based upon a pollution exclusion provision in their respective policies. In the ensuing declaratory judgment actions, the trial courts in both cases entered summary judgments against the insurance companies. Sitting en banc, the Fourth District Court of Appeal unanimously reversed the judgment in favor of Land-O-Sun and by a split decision reversed the judgment in favor of Deni.
Both pollution exclusion clauses are substantially the same. They exclude from liability coverage any personal injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants."[1] Further, each policy contained the following language:
Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalines, chemicals and waste.
In its opinion, the court rejected a rule of construction employed in many jurisdictions known as the doctrine of reasonable expectations. The court pointed out that this doctrine had not been adopted in Florida and that in any event because there was no ambiguity in the exclusions, there was no reason to analyze the expectations of the insureds. However, the court chose to pose the certified question with respect to the doctrine of reasonable expectations.
At the outset, we note that the certified question presupposes an ambiguity, whereas the court held that no such ambiguity existed. Notwithstanding, we believe that the legal efficacy of the pollution exclusion is an important issue which should be decided by this Court.
Apparently, the language of this pollution exclusion, sometimes called the absolute pollution exclusion, is in widespread use throughout the country because many courts have addressed the same arguments contained in the briefs filed in the instant cases. A substantial majority of these courts have concluded that the pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability.[2]See, e.g., Economy Preferred Ins. Co. v. Grandadam, 275 Ill.App.3d 866, 212 Ill.Dec. 190, 192, 656 N.E.2d 787, 789 (1995) ("The vast majority of courts that have examined `absolute pollution exclusions' have found them to be clear and unambiguous."); McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co., 220 Mich. App. 347, 559 N.W.2d 93, 97 (1996) ("There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution."); Tri County Serv. Co. v. Nationwide Mut. Ins. Co., 873 S.W.2d 719, 721 (Tex.App. 1993) ("[V]irtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes all coverage of any liability arising out of the release of pollutants.").
*1138 We, too, agree that the pollution exclusion clause is clear and unambiguous. In State Farm Mutual Automobile Insurance Co. v. Pridgen, 498 So.2d 1245 (Fla. 1986), this Court announced the rule to be followed in the interpretation of exclusionary clauses in insurance policies:
[E]xclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy. See Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla. 1979). However, "[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite.
It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties."
Id. at 1248.
We cannot accept the conclusion reached by certain courts that because of its ambiguity the pollution exclusion clause only excludes environmental or industrial pollution. E.g., Westchester Fire Ins. Co. v. City of Pittsburg, 768 F.Supp. 1463 (D.Kan.1991); South Cent. Bell Tel. Co. v. Ka-Jon Food Stores, 644 So.2d 357 (La.1994); West American Ins. Co. v. Tufco Flooring East, Inc., 104 N.C.App. 312, 409 S.E.2d 692 (1991). In responding to such an argument, the court in American States Insurance Co. v. F.H.S., Inc., 843 F.Supp. 187, 190 (S.D.Miss.1994), stated:
F.H.S. asks that this court, in essence, ignore the policy definition of "pollutants" or, perhaps more accurately, limit the term so that it is defined in the manner employed by environmental engineers, and thereby create coverage not provided by the policy. The court reiterates that it is not free to rewrite the terms of the insurance contract where that contract is not ambiguous. In this case, regardless of what is or might be a preferable definition from F.H.S.'s standpoint, or what would be the definition of choice from [an environmental engineer expert's] perspective, or the perspective of the scientific community, the policy definition of "pollutant," and the pollution exclusion construed as a whole is clear and unambiguous. Moreover, the claims that have been asserted against F.H.S. fall well within the exclusion.
(Footnote omitted.)
The United States District Court for the Middle District of Florida addressed a similar argument in West American Insurance Co. v. Band & Desenberg, 925 F.Supp. 758 (M.D.Fla.1996), when it said:
Band also argues that the pollution exclusion should apply only to "environmental" pollution. Band again relies on cases interpreting older versions of the pollution exclusion for this argument. In those cases, the courts first looked to the historical purpose of the pollution exclusion and held that the drafters intended the exclusion to limit coverage for clean-up costs imposed by EPA legislation. The courts then looked at the language requiring the discharge to be "onto land, into the atmosphere, or into water" and interpreted that to mean that the exclusion was applicable only when the pollutants were discharged into the outside environment. However, as with Band's first argument, this pollution exclusion does not have the language interpreted by the other courts. Thus, the reasoning of those cases is inapplicable to the case at hand. Additionally, this Court cannot examine the history of the exclusion because the language is clear and unambiguous and to resort to history would, therefore, be contrary to Florida law.
925 F.Supp. at 761-62 (citations omitted). Likewise, in Bernhardt v. Hartford Fire Insurance Co., 102 Md.App. 45, 648 A.2d 1047 (1994), cert. granted, 337 Md. 641, 655 A.2d 400 (1995), the court explained:
The landlord suggests that we judicially draft limitations upon the exception. First, he says, it should be limited to "industrial" or "industry-related" activities. Quite apart from the problems inherent in determining what may or may not be "industry-related," we are required to state the obviousnowhere in this exclusion does the word "industry" or "industrial" appear. There simply is no such limitation. *1139 648 A.2d at 1051. See Northern Ins. Co. v. Aardvark Associates, Inc., 942 F.2d 189 (3d Cir.1991) (rejecting argument that pollution exclusion clause should be limited to "active polluters").
As a court, we cannot place limitations upon the plain language of a policy exclusion simply because we may think it should have been written that way. Moreover, unless we conclude that the policy language is ambiguous, it would be inappropriate for us to consider the arguments pertaining to the drafting history of the pollution exclusion clause. Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp., 636 So.2d 700 (Fla.1993).
We also reject the argument that because the words "irritant" and "contaminant" are not defined, the policy exclusion is ambiguous. Sargent Constr. Co. v. State Auto Ins. Co., 23 F.3d 1324 (8th Cir.1994). The Fifth Circuit Court of Appeals addressed such an argument in American States Insurance Co. v. Nethery, 79 F.3d 473, 476 (5th Cir.1996):
Despite the patent applicability of the pollutant exclusion here, it is contended that paint and glue fumes do not constitute an "irritant" because they do not normally inflict injury. This argument might have made sense under a differently worded policy, but here it does not. Although the policy does not define "irritant," Webster's Dictionary defines it as "an agent by which irritation is produced (a chemical)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1197 (1981). An irritant is a substance that produces a particular effect, not one that generally or probably causes such effects. The paint and glue fumes that irritated Nethery satisfy both the dictionary definition and the policy exclusion of irritants.
Accord Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265, 269 (1st Cir. 1990) ("Although the terms within the definition of pollutant`irritant' and `contaminant'are not defined, the drafter of a policy need not define each word in the policy ad infinitum ...."); see Jefferson Ins. Co. v. Sea World, 586 So.2d 95, 97 (Fla. 5th DCA 1991) ("The mere failure to provide a definition for a term involving coverage does not necessarily render the term ambiguous.").
We also cannot agree with Judge Klein's suggestion[3] that those cases which hold the exclusion to be ambiguous when applied to the facts can be justified as clarifying a latent ambiguity. The principle which permits latent ambiguities to be clarified by parol evidence was first explained by this Court in Perkins v. O'Donald, 77 Fla. 710, 722, 82 So. 401, 404 (1919):
A latent ambiguity arises when it is sought to apply the words of the will to the subject or object of the devise or bequest, and it is found that the words of the will apply to and fit without ambiguity indifferently to each of several things or persons. In such cases evidence will be received to prove which of the subjects or persons so described was intended by the testator.
See Ace Elec. Supply Co. v. Terra Nova Elec., Inc., 288 So.2d 544, 547 (Fla. 1st DCA 1973) (where purchase orders had to be approved by "the undersigned," question as to which of two undersigned was intended created latent ambiguity). In the instant case, there are no alternative factual scenarios to which the pollution exclusion clause might be applied.
The Texas Supreme Court recently explained why the "latent ambiguity" doctrine could never serve as a means for circumventing the plain language of the pollution exclusion clause. National Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 n. 4 (Tex.1995). The court first posited a classic example of a latent ambiguity, i.e., where a contract calls for goods to be delivered to "the green house on Pecan Street," but there are in fact two green houses on the street. The fact of the two green houses creates an uncertainty or ambiguity as to which was meant, thus requiring parol inquiry. Id. at 520. However, the court explained that in the pollution exclusion cases, there is only one underlying spill, dispersal, or discharge *1140 incident, and the question is simply whether it falls within the language of the exclusion. As the Texas court noted:
Applying the policies' language to the context of the claim here does not produce an uncertain or ambiguous result, but leads only to one reasonable conclusion: the loss was caused by a cloud of hydrofluoric acid, a substance which is clearly a "pollutant" for which coverage is precluded.
907 S.W.2d at 521.
Finally, we address the substance of the certified question which asks whether the doctrine of reasonable expectations should be applied to interpret CGL policies. Under this doctrine, the insured's expectations as to the scope of coverage is upheld provided that such expectations are objectively reasonable. Max True Plastering Co. v. United States Fidelity & Guar. Co., 912 P.2d 861 (Okla. 1996). Among those courts which have adopted the doctrine, most only apply it when it can be said that the policy language is ambiguous. Id. Notably, a number of courts which have adopted the doctrine of reasonable expectations have refused to apply it to this very pollution exclusion because they have deemed the language of the exclusion to be unambiguous. E.g., Constitution State Ins. Co. v. Iso-Tex, Inc., 61 F.3d 405, 410 (5th Cir.1995); Park-Ohio Indus., Inc. v. Home Indem. Co., 975 F.2d 1215, 1223 (6th Cir.1992); Resure, Inc. v. Chemical Distribute Inc., 927 F.Supp. 190, 194 (M.D.La. 1996), aff'd, 114 F.3d 1184 (5th Cir.1997); Bituminous Cas. Corp. v. RPS Co., 915 F.Supp. 882, 884 (W.D.Ky.1996); Vantage Dev. Corp. v. American Env't Tech. Corp., 251 N.J.Super. 516, 598 A.2d 948, 955 (1991). Yet, a few courts have invoked the doctrine even in cases where the language of the pollution exclusion was clear and unambiguous. E.g., Regional Bank of Colorado, N.A v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494 (10th Cir.1994); Island Associates, Inc. v. Eric Group, Inc., 894 F.Supp. 200 (W.D.Pa.1995).
We decline to adopt the doctrine of reasonable expectations.[4] There is no need for it if the policy provisions are ambiguous because in Florida ambiguities are construed against the insurer. To apply the doctrine to an unambiguous provision would be to rewrite the contract and the basis upon which the premiums are charged. See Sterling Merchandise Co. v. Hartford Ins. Co., 30 Ohio App.3d 131, 506 N.E.2d 1192, 1197 (1986) ("[T]he reasonable expectation doctrine requires a court to rewrite an insurance contract which does not meet popular expectations. Such rewriting is done regardless of the bargain entered into by the parties to the contract.").
Construing insurance policies upon a determination as to whether the insured's subjective expectations are reasonable can only lead to uncertainty and unnecessary litigation. As noted in Allen v. Prudential Property & Casualty Insurance Co., 839 P.2d 798, 803 (Utah 1992):
Today, after more than twenty years of attention to the doctrine in various forms by different courts, there is still great uncertainty as to the theoretical underpinnings of the doctrine, its scope, and the details of its application.
We see no reason to address what might be the holding under certain hypothetical situations if we interpret the pollution exclusion clause as it is written because none of those facts are before us. Suffice it to say that insurance policies will not be construed to reach an absurd result. Travelers Indem. Co. v. Milgen Dev., Inc., 297 So.2d 845 (Fla. 3d DCA 1974), dismissed, 303 So.2d 334 (Fla.1974). Applying the unambiguous language of the pollution exclusion clause to the facts of these two cases, it is clear that the incidents at issue were excluded from coverage under the respective insurance policies.
*1141 All the claims against Deni came about when chemical fumes were released as a result of the ammonia spill. Ammonia is a colorless, gaseous alkaline compound which is extremely pungent in smell. Webster's Third New International Dictionary 70-71 (1976). The Federal Clean Air Act categorizes ammonia as an extremely hazardous substance, the release of which is known to have serious adverse effects to human health. 42 U.S.C. § 7412(r)(3) (1994). There is no doubt that the incident involved in the Deni case was excluded from coverage under the CGL policy. Other jurisdictions have also held that the pollution exclusion is applicable to ammonia leaks and spills which cause respiratory injuries to persons exposed to the ammonia fumes. Bituminous Cas. Corp. v. RPS Co., 915 F.Supp. 882 (W.D.Ky.1996); American States Ins. Co. v. F.H.S., Inc., 843 F.Supp. 187 (S.D.Miss.1994).
In the Fogg case, the injuries resulted from the spraying of Ethion 4 Miscible used to control mites and other pests. Ethion is recognized as a "pollutant" in regulations promulgated under Florida's "Pollutant Discharge Prevention and Control Act"[5] and is regulated under the "Florida Pesticide Law."[6] We reject Land-O-Sun's premise that when used properly Ethion causes no harm and is not a pollutant. It can obviously cause harm when it is not used properly. Thus, the pollution exclusion of the Florida Farm Bureau policy clearly precludes coverage for the incident in the Land-O-Sun case. We also note that other jurisdictions have reached the same conclusions involving pesticide sprays similar to Ethion. Protective Nat'l Ins. Co. v. City of Woodhaven, 438 Mich. 154, 476 N.W.2d 374, 378 (1991) ("It is almost beyond comprehension how anyone would seriously argue that such a pesticide is not an `irritant, contaminant or pollutant.'"); Hudson Ins. Co. v. Double D Management Co., 768 F.Supp. 1542 (M.D.Fla.1991); see Federal Insurance Co. v. McNichols, 77 So.2d 454 (Fla.1955) (upholding policy exclusion for damage caused "by chemicals or dusting powder" in claim for damage resulting from aerial spray of DDT).
We approve the decision of the court below in both cases.
It is so ordered.
KOGAN, C.J., and SHAW, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs and dissents with an opinion, in which OVERTON, J., concurs.
WELLS, Justice, concurring and dissenting.
I concur as to the spraying case involving Florida Farm Bureau. I dissent as to the case involving the printing machine. I adopt the well-reasoned dissent of Judge Klein in the district court's opinion. I believe to do otherwise allows the exclusion to swallow the coverage, rendering the policy to no longer be a comprehensive general liability policy as it was sold to be by State Farm.
OVERTON, J., concurs.
NOTES
[1] The State Farm policy contained the additional words "seepage," "ingestion," and "spill."
[2] State Farm and Farm Bureau together with their amici have cited more than 100 cases from 36 other states which have applied the plain language of the pollution exclusion clause to deny coverage.
[3] In his concurring and dissenting opinion below, Judge Klein stated that he would uphold the pollution exclusion in the Land-O-Sun case but find it inapplicable in the Deni case.
[4] While supporting the insureds' claim for coverage in these cases, the Florida Department of Insurance categorically opposes the adoption of the doctrine of reasonable expectations. According to its answer brief: "Adopting the reasonable expectations doctrine will negate the traditional construction guidelines and create greater uncertainty. This Court should not resort to the reasonable expectations doctrine because it will only spawn more litigation to determine the parties' expectations."
[5] Ch. 376, Fla. Stat. (1995); Fla. Admin. Code., R. 381-30.003.
[6] Ch. 487, Part I, Fla. Stat. (1995).