AUTO–OWNERS INSURANCE
COMPANY, Plaintiff,

v.

The HOUSING AUTHORITY OF THE CITY OF TAMPA, a municipal agency; Darren Campbell, by and through his mother and next friend, Sheletha Filmore and Sheletha Filmore, individually, Defendants.

No. 98–565–CIV–T–26E.

United States District Court,
M.D. Florida,
Tampa Division.

July 16, 1999.

Matthew Charles Scarborough, Stuart & Strickland, P.A., Tampa, FL, for Auto Owners Insurance Co., plaintiff.

Charles Franklin Ketchey, Jr., Sarah H. Dennis, Ketchey, Horan, Hearn, Neukamm & Baumann, P.A., Tampa, FL, Michael S. Rywant, Rywant, Alvarez, Jones, Russo & Guyton, P.A., Tampa, FL, for City of Tampa Housing Authority, a municipal agency, defendant.

Paul S. Kimsey, Kimsey & Associates, P.A., Tampa, FL, for Darren Campbell, Sheletha Filmore, defendant.

## ORDER

LAZZARA, District Judge.

Before the Court are Plaintiff's Amended Motion for Summary Judgment (Dkt.40) and Defendant Housing Authority of the City of Tampa's Response and Cross–Motion for Summary Judgment (Dkt.45).

## ISSUES

The issues before this Court are 1) whether the pollution exclusion clause of the comprehensive general liability (CGL) insurance policies in this case is unambiguous and therefore no coverage exists for the ingestion and inhalation of lead paint; 2) whether if there is coverage, there is a duty to defend; and 3) whether if there is

a duty to defend, there is a duty to indemnify. Having diversity jurisdiction, this Court determines that based on Florida law, the pertinent terms of the pollution exclusion clauses are unambiguous and no coverage exists for the inhalation or ingestion of lead paint from a residence.

## FACTS

In the Second Amended Complaint (Dkt.41), Auto–Owners Insurance Company sued The Housing Authority of the City of Tampa (THA), Darron Campbell (Campbell), through his mother and next friend, Sheletha Filmore, and Sheletha Filmore (Filmore), individually, for declaratory relief. Presently pending in the state circuit court in and for Hillsborough County, Florida, is an action filed by Campbell and Filmore against THA for injuries resulting from Campbell's ingesting and inhaling lead from the paint in the walls of the public housing apartments controlled by THA. The state court complaint alleges, among other things, negligence, civil rights violations, and violations of the Lead–Based Paint Poisoning Prevention Act, 42 U.S.C. section 4822, the United States Housing Act, 42 U.S.C. section 1437d, and the Residential Lead–Based Hazard Reduction Act of 1992, 42 U.S.C. 4852(d). Plaintiffs allege that the walls were covered with crumbling paint containing lead.

During all relevant times, Auto–Owners provided CGL policies for bodily injury and property damage. The three policies contained the following same language with respect to the "absolute pollution exclusion" clause:

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened *discharge, dispersal, seepage, migration, release or escape of pollutants:*

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(2) Pollutants means any solid, liquid, gaseous or thermal *irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and*

*waste.* Waste includes materials to be recycled, reconditioned or reclaimed.

(Emphasis added.)

## ARGUMENT

THA agrees that the pollution exclusion clause at issue is unambiguous as espoused in *Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Insurance Co.,* 711 So.2d 1135 (Fla.1998). THA argues, however, that the Florida Supreme Court "did not establish that injuries sustained from lead-based paint are subject to the clause." In support of its argument, THA asserts that the definition of pollutant in the policies does not include lead paint, because the lead in lead-based paint does not fall into the category of "smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste." THA futher contends that *Deni* and *American States Insurance Co. v. Nethery,* 79 F.3d 473 (5th Cir.1996), do not support a holding that "lead-related" injuries are excluded from coverage by the pollution exclusion clause. THA correctly points out that in *Nethery,* the injuries were caused by paint fumes and "fumes" are specifically listed as excluded by the pollution exclusion clause. THA does not address, however, the fact that lead is certainly a "chemical," which is also specifically listed as excluded by the pollution exclusion clause.

As a second basis, THA argues that the alleged injuries did not occur in the manner prescribed by the exclusion clause; in other words, the injuries were not the result of "discharge, dispersal, seepage, migration, release or escape." This so-called "movement" argument, relying on *Sphere Drake Insurance Co., P.L.C. v. Y.L. Realty Co.,* 990 F.Supp. 240 (S.D.N.Y. 1997), posits that lead paint poisoning is caused by ingestion or inhalation of paint that has flaked over time rather than from any "discharge, dispersal, seepage, migration, release or escape." Hence, the lead from the paint chips, flakes or dust does not move into the body by one of the six ways listed in the clause. For the follow-

ing reasons, this Court finds THA's position untenable.

## ANALYSIS

THA has made the best possible arguments in fighting its uphill battle. Nevertheless, this Court cannot overlook the binding precedent of Florida law in this diversity case and the Eleventh Circuit's cases construing similar pollution exclusion clauses, albeit not based on poisoning from lead paint in housing. This Court is convinced that the Florida Supreme Court would reach the same result of "no coverage" in this case involving injuries resulting from the ingestion or inhalation of lead paint crumbling off the walls of a public housing facility. The Eleventh Circuit's decision in *Technical Coating Applicators, Inc. v. United States Fidelity and Guaranty Co.*, 157 F.3d 843 (11th Cir.1998), as well as other cases, confirm that the present state of Florida law with respect to pollution exclusion clauses warrants a finding of "no coverage" in this case.

Many of the courts upholding coverage for lead paint poisoning based their decisions on a finding that the same pollution exclusion clause was ambiguous as opposed to unambiguous. *See, e.g., Sphere Drake Ins. Co., P.L.C. v. Y.L. Realty Co.*, 990 F.Supp. 240 (S.D.N.Y.1997); *Lefrak Org., Inc. v. Chubb Custom Ins. Co.*, 942 F.Supp. 949, 954 (S.D.N.Y.1996); *Byrd v. Blumenreich*, 317 N.J.Super. 496, 722 A.2d 598 (App.Div.1999). Just as there are cases upholding coverage for cases involving lead paint poisoning, many other courts have barred coverage. *See, e.g., Auto–Owners Ins. Co. v. Hanson*, 588 N.W.2d 777 (Minn.Ct.App.1999); *St. Leger v. American Fire and Cas. Ins. Co.*, 870 F.Supp. 641 (E.D.Pa.1994).

■ In Florida, the law is clear that pollution exclusion clauses like the ones in this case are clear and unambiguous. *See Deni*, 711 So.2d at 1138. The Eleventh Circuit has at least twice upheld this premise. *See Technical Coating Applicators, Inc. v. United States Fidelity and Guar. Co.*, 157 F.3d 843 (11th Cir.1998); *West*

*American Ins. Co. v. Band & Desenberg*, 138 F.3d 1428 (11th Cir.1998) (affirming the district court's decision at 925 F.Supp. 758 (M.D.Fla.1996)). To avoid the holding of *Deni*, one must argue that the exclusion is ambiguous when applied to the facts. It is clear, however, that *Deni* prohibits any such attempt as an attempt to permit a latent ambiguity to be clarified by parol evidence. *See Deni*, 711 So.2d at 1139–40. Where there are no alternative factual scenarios to which the pollution exclusion clause might be applied, there is no need to apply the "latent ambiguity" doctrine. *Id.* In pollution exclusion cases, "there is only one underlying spill, dispersal or discharge incident, and the question is simply whether it falls within the language of the exclusion." *Id.*

■ In any event, a comparison of the facts of the various authoritative cases justifies a finding of "no coverage" for injuries caused by the inhalation or ingestion of lead. In *Deni*, one factual scenario involved the inhalation of fumes from ammonia accidentally spilled from a blueprint machine. The other factual situation entailed two men receiving a splashing of insecticide. In *Deni*, the pollution exclusion clauses are identical to the clauses in this case with the following exceptions: in the insecticide case, the deletion of the words "seepage" and "migration;" and in the ammonia case, the addition of the words "ingestion" and "spill" and the deletion of the word "migration." *See Deni*, 711 So.2d at 1137 n. 1.

In *Technical Coating* and *West American*, the pollution exclusion clauses are identical to the clauses at issue in this case. In *Technical Coating*, the emission of vapors from roofing products injured employees and students. In *West American*, the employees suffered from "sick building syndrome" from the contaminants in the building's air. As noted by the *Technical Coating* court, the Florida Supreme Court cited to an example of fumes from paint as an irritant, even though such fumes may

not normally or necessarily inflict injury. *See Technical Coating,* 157 F.3d at 845.

In addition to the above-cited cases, the case of *Shalimar Contractors, Inc. v. American States Insurance Co.,* 975 F.Supp. 1450 (M.D.Ala.1997), *aff'd,* 158 F.3d 588 (11th Cir.1998), is instructive. The insurance policy in *Shalimar* contained the same pollution exclusion clause as in this case with the deletion of the words "seepage" and "migration." In *Shalimar,* a contractor for a housing authority was performing lead abatement[1] in· a housing project. During the abatement process in one of the apartment buildings, workers left debris containing lead on the porch beside the apartment where two children lived. Workers also left their lead-contaminated clothing at the work site. The two children suffered lead poisoning as a result of the abatement activities.

Although the *Shalimar* court construed Alabama law, the district court found that the contract language was unambiguous and, as did the Florida Supreme Court, held that the reading of the terms "discharge, dispersal, release and escape" should not be defined by resorting to highly technical and specific definitions found in places other than the insurance policy. As to whether lead was considered a pollutant, the *Shalimar* court opined that it could not be seriously argued that lead was not a pollutant or solid contaminant or toxic chemical. *Shalimar* represents a case in which the same pollution exclusion clause was applied to a situation in which injuries were caused by abatement procedures used in cleaning up lead paint from a housing facility. It seems illogical to make a distinction between situations where the paint is inhaled or ingested before abatement proceedings have begun as opposed to after they have begun. The

pollutant, lead, is clearly an irritant or contaminant, and definitely a chemical, which by "discharge, dispersal, seepage, migration, release or escape" can cause bodily injury.

■ In this case, the lead poisoning was alleged to have been caused by ingesting or inhaling lead from lead-based, "old crumbling" paint found in the walls of the public housing facility. (Dkt. 45, Exh. B at paras. 4 and 6). In *Shalimar,* the lead poisoning was alleged to have been caused by the existence of debris containing lead from the lead abatement process used in a public housing project to remove lead-based paint. Whether the paint is being removed by an abatement process or whether the paint has not yet been removed pursuant to the abatement process required by the United States Code, is irrelevant. The determination of whether a substance is a pollutant or irritant is not determined by its use. *See Technical Coating Applicators, Inc. v. United States Fidelity and Guar. Co.,* 157 F.3d 843, 845 (11th Cir.1998) (*Deni*'s holding encompasses even those discharges that result from the proper, everyday use of otherwise benign products and materials). Thus, the "movement" of the lead by way of abatement or by way of emanating from the passage of time from the walls of the facility does not change the outcome of the interpretation of the exclusion clause.

Other authorities lend credence to the finding that lead is a pollutant. Lead has been identified by federal regulations as a pollutant "in the context of ambient air quality mandated by the Clean Air Act [at] 40 C.F.R. §§ 50.2, 50.12." *See Leger,* 870 F.Supp. at 643. "Ingestion of household dust containing lead released by lead paint is the most common cause of lead poisoning in children. 42 U.S.C. § 4851(4)." *Id.*

---

**1.** Abatement is defined as "any set of measures designed to permanently eliminate lead-based paint hazards in accordance with standards established by appropriate Federal agencies. Such term includes—(A) the removal of lead-based paint and lead-contaminated dust, the permanent containment or

encapsulation of lead-based paint, the replacement of lead-painted surfaces or fixtures, and the removal or covering of lead contaminated soil; and (B) all preparation, cleanup, disposal, and postabatement clearance testing activities associated with such measures." See 42 U.S.C. § 4851b.

"Exposure to lead from lead-contaminated dust or lead-contaminated paint that would result in adverse human health effects is labeled a 'hazard' in the Residential Lead–Based Paint Hazard Reduction Act of 1992. 42 U.S.C. § 4851b(15)." *Id.*

Not only does the federal government recognize lead as a pollutant, but Florida recognizes the hazards of lead. The Florida legislature in Chapter 403 of the Florida Statutes titled "Environmental Control" has expressed its finding that metals such as lead are of particular concern in the area of reducing the toxicity of packaging waste. *See* § 403.7191(1)(d), *Fla.Stat.* (1997). Chapter 376 of the Florida Statutes titled "Pollutant Discharge Prevention and Removal" defines "petroleum products' chemicals of concern" as including constituents in petroleum products including lead. *See* § 376.301(28), *Fla.Stat.* (1997). In enacting sections 376.30 through 376.319, the legislature intended to "support and complement applicable provisions of the Federal Water Pollution Control Act, as amended, specifically those provisions relating to the national contingency plan for removal of pollutants." *See* § 376.30(5), *Fla.Stat.* (1997).

Based on the overwhelming authority and the reasoning set forth in this order, this Court enters declaratory relief in favor of Auto–Owners Insurance Company. Having decided there is no coverage, the Court need not reach the issues of the duty to defend or indemnify. It is therefore **ORDERED AND ADJUDGED** that Plaintiff's Amended Motion for Summary Judgment (Dkt.40) is **GRANTED**. Defendant Housing Authority of the City of Tampa's Cross–Motion for Summary Judgment (Dkt.45) is **DENIED**. The Clerk is directed to close this file. All other pending motions are **DENIED** as moot.