274 F.3d 249 (5th Cir. 2001)
 NORFOLK SHIPBUILDING & DRYDOCK CORPORATION, Plaintiffs,
v.
SEABULK TRANSMARINE PARTNERSHIP, LTD., ET AL., Defendants,
SEABULK TRANSMARINE PARTNERSHIP, LTD., Plaintiffs,
v.
NORFOLK SHIPBUILDING & DRYDOCK CORP., ET AL., Defendants,
NORFOLK SHIPBUILDING & DRYDOCK CORP., Defendant-Appellant,
v.
VESTA FORSIKRING A/S, also known as Skadeforsikringsselskapet Vesta A/S; CERTAIN UNDERWRITERS AT LLYOD'S, LONDON AND AT THE INSTITUTE OF LONDON UNDERWRITERS, Underwriters at Lloyd's Subscribing to Cover Notes EII-20252(A) & EII-204052(B), Defendants-Appellees.
 No. 00-31286
 UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT
 November 26, 2001
 
 Appeal from the United States District Court for the Eastern District of Louisiana
 Before KING, Chief Judge, and DUHE and BENAVIDES, Circuit Judges.
 BENAVIDES, Circuit Judge:
 
 
 1
 This insurance case arises out of a dispute related to the construction of a ship. The parties to the construction contract obtained a builder's risk policy under which both of them were listed as principal assureds. A dispute arose between the two principal assureds regarding the design of the ship's hull, and litigation ensued. The insurance policy contained no explicit duty to defend clause, and we must determine whether coverage for defense costs in a suit between the principal assureds can be found in the policy's provision for third party liability coverage. Because we hold that it cannot, we AFFIRM the judgment of the district court.
 
 I. Facts
 
 2
 This appeal is the latest episode in the lengthy and complex dispute surrounding efforts by Seabulk Transmarine Partnership, Ltd. ("Seabulk") to build a new vessel, the M/V SEABULK AMERICA, and the insurance contract that covered the ship's construction.
 
 A. Construction of the Ship
 
 3
 To build the SEABULK AMERICA, Seabulk planned to combine parts of two separate vessels, the Barge 4102 and the M/V FUJI. The Barge 4102 transported chemical products, but had no means of propulsion after the sinking of its custom-fitted tug. Seabulk sought to resolve this problem by combining the forward section of the barge with the stern of the FUJI, a wrecked tanker. The hulls of these two existing vessels, however, were of dissimilar widths and depths, so that Seabulk faced the challenge of obtaining a third, intermediate hull to join the other two. For this task it engaged C.R. Cushing & Company, Inc. ("CRC") to handle its engineering and naval architecture needs. CRC then commissioned the Maritime Research Institute of the Netherlands ("MARIN") to perform model testing of the proposed SEABULK AMERICA. MARIN built a model of the proposed hull design, tested it, and even produced a drawing depicting the lines of the hull form ("the MARIN lines").
 
 
 4
 Before the MARIN lines were finished, CRC and Seabulk solicited bids for the actual construction of the SEABULK AMERICA. Appellant Norfolk Shipbuilding & Drydock Corporation ("Norshipco") successfully bid on the work. Although the construction contract between Seabulk and Norshipco did not explicitly refer to the MARIN lines, Norshipco understood that it was obligated to follow them. During the course of the construction, however, Seabulk became aware that Norshipco was not following the MARIN lines, and instead was using lines developed by its own subcontractor. As a result of deviating from the MARIN lines, Norshipco saved $15,000 in steel costs, but the speed of the finished product was slightly reduced. Ultimately, Seabulk obtained a completed SEABULK AMERICA that was substantially similar in performance to the originally proposed vessel, yet somewhat different in design.
 
 B. The Insurance Policy
 
 5
 The SEABULK AMERICA project was insured under a policy from certain Lloyd's of London syndicates and various insurance companies, collectively referred to by the lead underwriter, appellee Vesta Forsikring A/S ("Vesta"). The policy lists both Seabulk and Norshipco as "principal assureds," and defines "other assureds" as including the contractors, subcontractors and suppliers of the principal assureds. It is undisputed that § 1 of the policy provides first party insurance for physical loss and/or damage. Section II(B) covers "General Third Party Liabilities" and a "Cross Liabilities Clause" at the end of § II(C) states that in the event that one assured incurs liability to any other assured, coverage is no different than if separate policies had been issued to the assureds.[1]
 
 C. Procedural History
 
 6
 In June 1991, Seabulk filed an action against Norshipco for failure to build the SEABULK AMERICA in accordance with the proper hull lines. In April 1993, Norshipco filed a complaint against Seabulk to recover amounts due under the contract. The actions were consolidated in the Eastern District of Louisiana. In January 1995, Seabulk obtained leave to file an amended complaint against Vesta, asserting claims for refusing to cover purported losses stemming from the design of the SEABULK AMERICA's hull lines. Norshipco then filed a cross-claim against Vesta seeking coverage of its costs in defending against Seabulk's claim for defective hull lines.
 
 
 7
 The district court referred the case to a special master, who presided over a three-month trial. At the conclusion of the trial, he issued a draft report, allowed the parties to submit comments on the draft report, and held a hearing on the comments. Before a final report was issued, however, Seabulk entered into separate settlement agreements with Vesta and Norshipco. Only Norshipco's claim against Vesta remained. In his final report, the special master found in favor of Norshipco, holding that the policy was intended to cover such claims. The district court refused to adopt the final report, concluding that the special master's findings were clearly erroneous and contrary to law. Specifically, the court held that Norshipco's defense costs in the suit brought by Seabulk were not third party liabilities, and, in any event, were not covered because there was no actual loss or damage from Norshipco's breach of contract. Accordingly, the district court dismissed Norshipco's claim with prejudice. Norshipco timely appealed this judgment.
 
 II. Discussion
 
 8
 The parties agree that the central issue in this case is whether Norshipco's defense costs are covered under § II of the policy, specifically the third party liability coverage outlined in § II(B) and the cross liabilities provision at the end of § II(C).[2] We review a district court's interpretation of an insurance contract de novo. Adams v. Unione Mediterranea di Scurta, 220 F.3d 659, 677 (5th Cir. 2000), cert. denied, 121 S.Ct. 1191 (2001). It is undisputed that Florida law governs the interpretation of the contract.
 
 A. Parties' Contentions
 
 9
 Section II(B) of the policy, entitled "General Third Party Liabilities", states:
 
 
 10
 It is understood and agreed that coverage hereunder in respect of General Third Party Liabilities shall be in accordance with the following:
 
 
 11
 Underwriters hereon agree that if the Assured shall become liable (under) [sic] Contract or otherwise) to pay and shall pay any sum or sums in respect of any responsibility, claim, demand, damages and/or expenses, or shall incur any other loss arising from or occasioned either directly or indirectly by the Assured's operations in connection with the subject matters insured that is to say: . . .
 
 
 12
 loss or damage to or loss of use of property of any kind or description, including all other direct or indirect or consequential losses resulting from loss or damage to property,
 
 
 13
 Underwriters will pay the Assured such sum or sums so paid, or which may be required to indemnify the Assured for such losses, provided always that the liability under this Clause in respect of any one accident or series of accidents arising out of the same event, shall be limited as above . . . .
 
 
 14
 Norshipco contends that the liability protection provided under § II(B) covers its defense costs in the suit by Seabulk, as such costs are third party liabilities. In support of its position that Seabulk is a third party, Norshipco points to the "Cross Liabilities Clause" at the end of § II(C), which provides that:
 
 
 15
 In the event of one Assured incurring liability to any other of the Assureds, this insurance shall cover the Assured against whom claim is or may be made in the same manner as if separate policies had been issued to each Assured. However, the inclusion of more than one Assured hereunder shall not operate to increase the limit of liability herein.
 
 
 16
 Norshipco notes that such cross liability provisions generally guarantee coverage for claims emanating from disputes between assureds, so that the fact that both assureds chose to obtain coverage under the same policy does not prejudice them. See, e.g., Alaska v. Underwriters at Lloyd's London, 755 P.2d 396, 400 (Alaska 1988) ("The cross-liability clause requires that we read the policy 'as though a separate policy had been issued to each' insured."). Moreover, the policy contains no insured-versus-insured exclusion to void the effect of the cross liabilities clause. Finally, Norshipco argues that the district court's conclusion that § II does not cover its defense costs is contrary to the intent of the parties, who meant to secure full coverage for both Seabulk and Norshipco as if each had its own separate policy.
 
 
 17
 Vesta contends that Norshipco's defense costs are not covered under § II(B) because it is a principal assured, not a third party. It argues that parol evidence regarding the meaning of "General Third Party Liabilities" is inadmissible because the term is not ambiguous. Accordingly, we need not consider the effect of the cross liabilities clause, as it does not create coverage under § II(B) for claims that would otherwise fall outside the definition of third party liabilities. Alternatively, Vesta argues that coverage is unavailable because there was no "loss or damage to or loss of use of property." In the absence of such loss or damage, § II(B) does not provide coverage.
 
 B. Analysis
 
 18
 In order for Norshipco's defense costs to be covered under § II(B), Seabulk's claims must be "General Third Party Liabilities". Norshipco contends that the cross liabilities clause makes a claim by one policyholder against another policyholder a third party liability. This argument, however, places undue reliance on the cross liabilities clause. As Norshipco notes, the cross liabilities clause is not a part of § II(B); rather, it follows § II(C). As such, it does not increase the scope of coverage available under § II(B). It merely ensures that the parties are not prejudiced by their decision to obtain coverage under the same policy. Therefore, in deciding whether Seabulk's claims are covered under § II(B), we must first determine the contours of "General Third Party Liabilities", including the definition of "third party". We then shall apply the cross liabilities clause so that this § II(B) coverage is not diminished by the fact that Seabulk and Norshipco are insured under the same policy.
 
 1. Coverage under § II(B)
 
 19
 Having considered the structure and the plain terms of the policy, we conclude that Seabulk's claims cannot be considered "General Third Party Liabilities". The policy explicitly indicates that Seabulk, like Norshipco, is a principal assured, and § I outlines the coverage for certain losses between the principal assureds. Section II, however, is limited to claims by third parties, which obviously cannot be synonymous with principal assureds. By its very definition, third party liability does not include claims by the principal assureds, who as the primary policyholders are first parties to the insurance contract.
 
 
 20
 Norshipco seeks to avoid the plain meaning of "third party" by reliance on certain rules of contract interpretation and parol evidence. It notes that under Florida law, the policy is to be construed in favor of the insured. See Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla. 1997). This doctrine, however, applies only to the interpretation of ambiguities in the contract. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1138 (Fla. 1998). In the absence of any uncertainty, inconsistency, or ambiguity, Norshipco cannot rely on this rule to escape the clear meaning of a policy's term. Noting that the term "General Third Party Liabilities" is not explicitly defined in the policy, Norshipco argues that it is ambiguous. Given this uncertainty, Norshipco contends, it was incumbent upon Vesta to expressly exclude coverage for liability claims between principal assureds. The absence of an explicit definition, however, does not automatically render a term ambiguous. Rather, courts will accord the term its natural meaning consistent with common usage. Sec. Ins. of Hartford v. Commercial Credit Equip. Corp., 399 So.2d 31, 34 (Fla. App. 1981). In the present case, "General Third Party Liabilities" is simply not an ambiguous term, as application of its normally accepted meaning leaves no doubt that it does not encompass claims by principal assureds.
 
 
 21
 The absence of ambiguity in the policy also undercuts Norshipco's argument for the admission of parol evidence. Without an explicit finding of ambiguity, the special master considered inter alia testimony by Vesta's agent that he understood that the parties wanted full protection, with no gaps in coverage. The district court correctly ignored this testimony after finding no ambiguity to justify the consideration of parol evidence. As we already have stated, there is no ambiguity surrounding the issue of whether a third party liability provision covers claims between principal assureds. Moreover, we reject Norshipco's argument that parol evidence was necessary to explain "General Third Party Liabilities" because it was a term of art. Not only is this position inconsistent with Norshipco's argument that the term is ambiguous, Norshipco has not identified any evidence in the record purporting to explain "General Third Party Liabilities" as a term of art. All of the evidence cited in its brief relates to the parties' intent, not to any established trade usage. Accordingly, we agree with the district court's conclusion that there is no basis for the admission of parol evidence. We also agree with its holding that the "General Third Party Liabilities" provision covers just that third party liabilities, not costs incurred as a result of a dispute between principal assureds.
 
 2. Cross Liabilities Clause
 
 22
 Having addressed the scope of coverage under § II(B), we now analyze the effect of the cross liabilities clause on that coverage. As noted above, the cross liabilities clause guarantees that a named insured under a joint policy does not receive less coverage than would be available under an otherwise identical, separate policy. Norshipco argues that the cross liabilities clause, in addition to the absence of any insured-versus-insured exclusion in the policy, results in coverage for disputes between the named assureds. It contends that any interpretation of the policy that does not include such coverage effectively renders the cross liabilities clause meaningless. We disagree. As the district court noted, the cross liabilities clause clearly applies to situations in which a true third party asserts a claim against one of the principal assureds, who then seeks to hold another principal assured liable for the third party claim. In such cases, the cross liabilities clause acts to ensure that both principal assureds receive coverage, just as if they had purchased separate policies. This reasonable interpretation comports with the structure of the policy, giving effect to the cross liabilities clause without allowing it to eviscerate the express limitations on the coverage provided under § II(B).[3]
 
 III. Conclusion
 
 23
 We hold that the coverage under § II(B) does not extend to Norshipco's defense costs in the suit brought by Seabulk because § II(B) covers "General Third Party Liabilities", not claims between principal assureds. Having determined that Norshipco's defense costs are not third party liabilities, and that the cross liabilities clause does not transform them into such, we need not address the district court's independent, alternative basis for denial of coverage, i.e., that there was no actual loss or damage to the property. Accordingly, we AFFIRM the judgment of the district court.
 
 
 
 Notes:
 
 
 [1]
 Norshipco correctly notes in its reply brief and at oral argument that there are, in fact, four sections of the policy. It does not argue, however, that coverage for its defense costs is found in either § 3 or § 4.
 
 
 [2]
 Section I of the policy, which indisputably covers claims between principal assureds, does not apply to the claims at issue because it only provides coverage for damage to the insured vessel.
 
 
 [3]
 Because Norshipco is not entitled to its defense costs under the policy, it cannot recover attorney's fees in prosecuting the present action against Vesta. The Florida statute on which Norshipco relies only applies to cases in which the insured prevails on its claim against an insurer. As Norshipco has not prevailed on the claim against Vesta, a statutory award of attorney's fees is not available.