**MAXUM INDEMNITY COMPANY,**
Plaintiff,

v.

**FLORIDA CONSTRUCTION SERVICES, INC. and Thomason–Stevens, LLC, Defendants.**

**Case No. 8:13–cv–2990–T–36AEP.**

United States District Court,
M.D. Florida,
Tampa Division.

Signed Nov. 18, 2014.

John Joseph Cavo, Sina Bahadoran, Hinshaw & Culbertson, LLP, Coral Gables, FL, for Plaintiff.

John F. Panzarella, McIntyre, Panzarella, Thanasides, Bringgold & Todd, PA, Sarah M. Baggett, Galloway, Johnson, Tompkins, Burr & Smith, PLC, Tampa, FL, for Defendants.

## ORDER

CHARLENE EDWARDS HONEYWELL, District Judge.

This cause comes before the Court upon the Plaintiff Maxum Indemnity Company's ("Maxum") Motion for Judgment on the Pleadings (Doc. 21). On June 17, 2014, Defendants sought an extension of time to July 1 to respond to Maxum's motion (Doc. 22). This Court granted the extension (Doc. 23). On July 1, however, no response was filed, so the Court on August 20 directed Defendants to respond by August 27 or the Court would consider the motion as unopposed (Doc. 25). Because Defendants have not responded to the motion or the Court's order, the Court will consider the motion as unopposed. The Court, having considered the motion and being fully advised in the premises, will now GRANT Maxum's Motion for Judgment on the Pleadings.

## I. STATEMENT OF FACTS [1]

### A. The First Action

The first complaint leading to the present action was filed by the Estate of Rebecca Hawk. See Doc. 1–2. That complaint alleges as follows: Hawk was a resident of the Vista Grand at Tampa

---

1. The Court derives the following Statement of Facts from the Complaint and the exhibits submitted in support thereof. Doc. 1. Because Defendants have not responded to Maxum's motion despite the Court's notice, the facts contained therein are considered to be undisputed.

Palms apartment complex. Thomason–Stevens was one of the general contractors that constructed the building in which Hawk resided. The bedroom in which Hawk normally slept shared a common tenant fire separation wall with a single car garage used by her neighbor, James Grywalski. On the evening of August 30, 2011, after Hawk went to sleep in her bedroom, Grywalski parked his car in the garage but unintentionally failed to turn off the engine. The car ran throughout the night, emitting carbon monoxide and car exhaust fumes. Carbon monoxide penetrated the common tenant separation wall, tragically resulting in Hawk's death.

Hawk's complaint asserts two causes of action against Thomason–Stevens—one for violating Florida's Building Code, and one for common law negligence—and alleges that Thomason–Stevens failed to properly design and install the HVAC system and/or common tenant separation wall, permitting carbon monoxide to penetrate the wall and proximately causing her death.

### B. The Underlying Action

In its answer to Hawk's complaint, Thomason–Stevens filed a third-party complaint against, *inter alia*, Florida Construction Services. *See* Doc. 1–3 at 18. Thomason–Stevens' third-party complaint, which incorporates Hawk's complaint, alleges that Thomason–Stevens subcontracted with Florida Construction Services to perform work and supply materials. It further alleges that if Hawk were able to prove that the materials supplied by Florida Construction Services were defective or deficient, that would constitute negligence and a breach of the subcontract agreement on the part of Florida Construction Services. Thomason Stevens' complaint asserts three causes of action against Florida Construction Services—one for contractual indemnity, one for common law indemnity, and one for contribution—and claims that the damages that Hawk is seeking were caused by acts and/or omissions within the scope of the work performed by Florida Construction Services.

### C. The Instant Action

At the time of Hawk's death, Florida Construction Services was covered by a Commercial General Liability policy issued to it by Maxum. Doc. 1–5 ("Policy"). The Policy insures against liability incurred as a consequence of bodily injury or property damage, with several exclusions. Accordingly, after Thomason–Stevens filed its third-party complaint against Florida Construction Services, Maxum brought this action seeking a declaratory judgment that it has no obligation to defend or indemnify Florida Construction Services under the Policy in the underlying suit. Doc. 1. In its complaint, Maxum argues that three of the Policy's exclusions apply—the Total Pollution Exclusion; the New Residential Construction Exclusion; and the Breach of Contract Exclusion. Maxum now argues that it is entitled to judgment on the pleadings because the Total Pollution Exclusion bars, as a matter of law, any potential claim for indemnity by Florida Construction Services, and relieves it of any duty to defend Florida Construction Services in the underlying action.

### II. LEGAL STANDARD

Federal Rule of Civil Procedure No. 12(c) permits a party to move for judgment on the pleadings. In evaluating a motion for judgment on the pleadings, a court will accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *See Cunningham v. Dist. Attorney's Office for Escambia County*, 592 F.3d 1237, 1255

(11th Cir.2010). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Id.*

## III. DISCUSSION

### A. Duty to Defend

■ Maxum argues that it has no duty to defend Florida Construction Services in the underlying action. The Court agrees. "An insurance carrier's duty to defend a claim depends solely upon the allegations in the complaint," *Fun Spree Vacations, Inc. v. Orion Ins. Co.,* 659 So.2d 419, 421 (Fla. 3rd DCA 1995), and "[t]here is no obligation on an insurer to defend an action against its insured when the pleading in question shows the applicability of a policy exclusion." *Acceptance Ins. Co. v. Bates, Dunning & Associates, Inc.,* 858 So.2d 1068, 1069 (Fla. 3rd DCA 2003).

■ Maxum issued a Commercial General Liability policy to Florida Construction, Policy No. GLP 6015448–01, with coverage beginning on April 25, 2011 and ending on April 25, 2012. The Policy's Total Pollution Exclusion clearly and unambiguously applies here. The pertinent provision of the Policy states:

This insurance does not apply to:

[ . . . ]

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any Insured or others test for,

monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants;

[ . . . ]

A pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, electromagnetic fields and waste from any source whatsoever. . . . This exclusion applies regardless of whether the exposure to a pollutant occurs indoors or outdoors.

Policy, Form P004, at 1–2.

■ First, the applicability of this exclusion is a matter of law that can be properly resolved on the pleadings. *See, e.g., Scottsdale Ins. Co. v. Pursley,* 487 Fed. Appx. 508, 511 (11th Cir.2012). Second, as the Florida Supreme Court has held, such exclusion clauses are clear and unambiguous. *See Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Ins. Co.,* 711 So.2d 1135, 1138 (Fla.1998). Finally, Hawk's complaint specifically and solely alleges that her death was caused by "a fatal amount of carbon monoxide" that penetrated the common tenant separation wall. Doc. 1–2 ¶ 28. As the Eleventh Circuit and many other courts have held, and as Defendants do not dispute, carbon monoxide is a pollutant. *See, e.g., Admiral Ins. Co. v. Feit Management Co.,* 321 F.3d 1326, 1327–28 (2003).

In sum, it is clear from the pleadings that any liability that could attach to Florida Construction Services in the underlying action would stem from bodily injury that occurred, "in whole or in part," from the actual or alleged "discharge, dispersal, seepage, migration, release, or escape of pollutants." Because the Policy clearly and unambiguously excludes such coverage, it must be applied as written, *see*

*Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla.2003). As the pleadings show a lack of coverage, there is no obligation for Maxum to provide a defense to Florida Construction Services. Therefore, Maxum is entitled to judgment on the pleadings that it has no duty to defend Florida Construction Services in the underlying action.

**B.   Duty to Indemnify**

█ Florida law is clear that if there is no duty to defend, there is no duty to indemnify. *Fun Spree Vacations,* 659 So.2d at 422. Having concluded that there is no duty to defend, Maxum, likewise, has no duty to indemnify Florida Construction Services. Maxum is entitled to judgment on the pleadings that it has no duty to indemnify Florida Construction Services in the underlying action.

**IV.   CONCLUSION**

The pleadings reveal that the only liability that could attach to Florida Construction Services stems from Hawk's death as a consequence of carbon monoxide poisoning. Because this constitutes bodily injury that would not have occurred but for the release of a pollutant, the Total Pollution Exclusion applies and Maxum owes no duty to defend or indemnify Florida Construction Services in the underlying action. Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1.   Plaintiff's Motion for Judgment on the Pleadings (Doc. 21) is **GRANTED.**

2.   The Court will enter a Declaratory Judgment in favor of Plaintiff Maxum Indemnity Company by separate order.