**PHILADELPHIA INDEMNITY IN-SURANCE COMPANY, a Pennsylvania Corporation, Plaintiff,**

v.

**YACHTSMAN'S INN CONDO ASSOCIATION, INC., and Moss and Associates Property Management, Inc., Defendants.**

Case No. 08–10060–CIV.

United States District Court,
S.D. Florida,
Key West Division.

Jan. 22, 2009.

Gary I. Khutorsky, Esq., Yelena Shneyderman, Esq., Stephens Lynn Klein & McNicholas, Miami, FL, for Plaintiff.

David Harry Rogel, Esq., Becker & Poliakoff, Mark David Feinstein, Esq., Feinstein & Sorota, Miami, FL, Andrew William Bray, Esq., Andrew W. Bray, P.A., Fort Lauderdale, FL, for Defendants.

## ORDER GRANTING SUMMARY JUDGMENT FOR PLAINTIFF

JAMES LAWRENCE KING, District Judge.

THIS CAUSE is before the Court upon Defendant Moss and Associates Property Management, Inc. and Plaintiff Philadelphia Indemnity Insurance Company's cross motions for summary judgment (D.E. # 12, # 15), both filed on December 12, 2008.[1]

## I. BACKGROUND

Plaintiff Philadelphia Indemnity Insurance Company issued a commercial general liability policy No. PHPK 163046 ("the Policy") to Defendant Moss & Associates Property Management, Inc. ("Moss") as the named insured with a separate endorsement naming Yachtsman's Inn Condo Association, Inc. ("Yachtsman") as an additional named insured. (Compl. Dec. Relief ¶¶ 17–18). The Policy was in effect from March 21, 2006 to March 21, 2007 (D.E. # 11).

From June 12, 2006 to June 29, 2006, Milton Dale Boone, Jr. was employed by Moss. (Compl. ¶ 4, *Milton Dale Boone, Jr. v. Yachtsman's Inn Condo. Ass'n, Inc.*, Case No. 08–CA–38P (Fla. 16th Cir.Ct.)) ("St. Ct. Compl."). White working for Moss, he was tasked with pressure cleaning the underground parking areas at Yachtsman's Inn (St. Ct. Compl. ¶¶ 4–6). During this job, Mr. Boone was allegedly "exposed to feces, raw sewage and battery acid which [Yachtsman] had allowed to accumulate and was overflowing on its premises." (St. Ct. Compl. ¶ 6). As a direct result of this exposure, Mr. Boone "suffer[ed] severe dermatological injuries." (St. Ct. Compl. ¶ 11).

On January 11, 2008, Mr. Boone filed suit against Yachtsman in the Circuit Court of the 16th Judicial Circuit in and for Monroe County, Florida alleging that Yachtsman negligently failed "to maintain its premises in a safe manner, free from

---

1. Both Motions for Summary Judgment were filed on December 12, 2008. On December 29, 2008, Defendant Moss and Associates Property Management, Inc. filed its Response (D.E. # 19) and on December 30, 2008, Defendant Yachtsman's Inn Condo Association filed its Response (D.E. # 21). Plaintiff replied on January 12, 2009 (D.E. # 24).

As to Defendant's Motion, Plaintiff responded on December 30, 2008 (D.E. # 20). Defendant Moss and Associates Property Management, Inc. replied on January 12, 2009 (D.E. # 22).

hazardous condition that would pose a risk of harm to its guests and invitees." (St. Ct. Compl. ¶ 14). Yachtsman filed a Third Party Complaint against Moss in the same state-court action on May 14, 2008. (Third Party Compl., *Milton Dale Boone, Jr. v. Yachtsman's Inn Condo. Ass'n, Inc.*, Case No. 08–CA–38P (Fla. 16th Cir.Ct.)) ("St. Ct. Third Party Compl."). The basis of Yachtsman's pleading was that it had a "contract with Moss to manage, maintain and operate Yachtsman's Inn." (St. Ct. Third Party Compl. ¶ 10). Yachtsman argued that, should it be found liable for Mr. Boone's injuries, Moss must also be held liable because "Moss employed [Mr. Boone] and directed him to perform services at the property operated by Yachtsman." (St. Ct. Third Party Compl. ¶ 6).

Although representing both Yachtsman and Moss in the state-court action pursuant to a reservation of rights (Compl. Dec. Relief ¶¶ 13, 16), Plaintiff filed its Complaint for Declaratory Relief in this Court on September 8, 2008 (D.E. # 1). Plaintiff acknowledges that it issued the Policy to Moss as the named insured, (Compl. Dec. Relief ¶ 17); however, Plaintiff now seeks a declaratory judgment against Yachtsman and Moss that there is no insurance coverage, duty to defend, or duty to indemnify Defendants for the injuries asserted by Mr. Boone in the underlying state-court action.

The Policy clearly provides insurance for liability arising from bodily injury subject to a number of exclusions to coverage (D.E. # 11). One such exclusion, known as an "absolute pollution exclusion," states:

> This insurance does not apply to ... "Bodily injury" ... arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" ... [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured....

(D.E. # 11). The Policy supplements the terms of the exclusion with a definition of "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (D.E. # 11). The Policy further defines "waste" to include "materials to be recycled, reconditioned or reclaimed." (D.E. # 11).

The Parties' pleadings both address the interpretation of the Policy's pollution exclusion. Plaintiff contends that the claims in the underlying, action that have been asserted against Yachtsman and Moss are not covered under the Policy due to the language of the pollution exclusion (Mot. Summ. J. 2). Defendants argue that summary judgment in favor of Plaintiff is inappropriate because there are issues of fact as to "the ambiguous provisions and/or terms in the [Policy's] pollution exclusion." (Def. Yachtsman's Resp. Summ. J. 9); (Def. Moss's Resp. Summ. J. 2–3).[2]

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings and supporting mate-

---

**2.** Defendant Moss's Motion for Summary Judgment relies primarily on an argument that Plaintiff is precluded from denying coverage or defense of the underlying suit because it "failed to obtain independent counsel which was mutually agreeable to the parties" as required by the Florida's Claims Administration Act, (Def. Moss Mot. Summ. J. 2). The Florida Claims Administration Act, Fla. Stat. § 627.426(2) (2008), provides that "[a] liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless: ... [the insurer] retains independent counsel which is mutually agreeable to the parties." The Court is unpersuaded by this argument. The Florida Supreme Court has interpreted the term "coverage defense" to mean "a defense to coverage that otherwise exists," not "a disclaimer of liability based on an express coverage exclusion." *AIU Ins. Co. v. Block Marina Investment, Inc.*, 544 So.2d 998, 1000 (Fla.1989).

rials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 645 (11th Cir.1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991) (holding that, to meet its burden, the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); however, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252, 106 S.Ct. 2505. If the evidence offered by the nonmoving party is merely colorable or is not significantly pro-

bative, summary judgment is proper. *See id.* at 249–50, 106 S.Ct. 2505.

Contract interpretation is generally a question of law. *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir.1995). "Questions of fact arise only when an ambiguous contract term forces the court to turn to extrinsic evidence of the parties' intent ... to interpret the disputed term." *Id.*

### III. ANALYSIS

▉ Under Florida law,[3] the duty to defend is much broader than the duty to indemnify. *See, e.g., Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 443 (Fla. 2005). As a result, a court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify. *See, e.g., Nova Cas. Co. v. Waserstein*, 424 F.Supp.2d 1325, 1332 (S.D.Fla.2006) (*citing Fun Spree Vacations, Inc. v. Orion Ins.*, 659 So.2d 419, 421 (Fla. 3d DCA 1995)). When a Florida court makes a determination as to whether an insurer's duty to defend the insured exists, it must look to the allegations contained within the four corners of the complaint in the underlying action against the insured. *See, e.g., Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir.1995). Where the complaint against the insured alleges any facts which actually, or even potentially, fall within the scope of coverage under the policy, the insurer is obligated to defend the entire suit. *See Kopelowitz v. Home Ins. Co.*, 977 F.Supp. 1179, 1185 (S.D.Fla. 1997) (*citing MCO Envtl., Inc. v. Agric. Excess & Surplus Ins. Co.*, 689 So.2d 1114, 1115 (Fla. 3d DCA 1997)). Thus, to make a determination as to the insurer's duty to defend, the Court must apply the language

---

**3.** In this diversity case, the Court must ascertain and apply the substantive law of Florida in an effort to reach the same result that a

Florida court would reach. *See, e.g., James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 n. 1 (11th Cir.2008).

of the Policy to the facts of the underlying complaint.

It is undisputed that no Florida court has addressed the language of a similar pollution exclusion clause specifically in terms of its application to raw sewage or to battery acid. (Pl.'s Mot. Summ. J. 9, 10); (Def. Moss Resp. Mot. Summ. J. 3). In such a situation, this Court must discern how Florida courts would decide the issue if confronted with it and interpret the Policy accordingly. "In interpreting insurance contracts, the Florida Supreme Court has made clear that 'the language of the policy is the most important factor.'" *James River Ins. Co.*, 540 F.3d at 1274 (*quoting Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 537 (Fla. 2005).) "Under Florida law, insurance contracts are construed according to their plain meaning." *Taurus*, 913 So.2d at 532. Where the policy's language is "plain and unambiguous, there is no special construction or interpretation required, and the plain language of the policy will be given the meaning it clearly expresses.'" *Fla. Farm Bureau Ins. v. Birge*, 659 So.2d 310, 312 (Fla. 2d DCA 1994). If the language of the policy contains any "genuine inconsistency, uncertainty or ambiguity in meaning," such language must be construed in favor of the insured. *State Farm Auto. Ins. v. Pridgen*, 498 So.2d 1245, 1248 (Fla.1986).

Both Parties agree that an essential issue in addressing the question of whether the complaint against the insured alleges facts that come within the scope of the Policy is the interpretation of the pollution exclusion. Plaintiff's primary contention is that the pollution exclusion is unambiguous and bars coverage for the damages claimed by Mr. Boone in the underlying state litigation because the damages—arising from exposure to "feces, raw sewage, and battery acid"—fall under the exclusion's language defining a pollutant (Pl's Mot. Summ. J. 11). Defendants argue that the pollution exclusion is ambiguous in the context of Mr. Boone's complaint and that, because no Florida court has specifically defined battery acid as "acid" or feces and sewage as "waste" under the exclusion, the Court should look to other jurisdictions as persuasive authority and hold that the standard language used in the pollutant exclusion does not apply. (Def. Yachtsman Resp. Mot. Summ. J. 7).

While no Florida court has addressed a pollution exclusion's application to the particular substances at issue in this case, the Florida Supreme Court has analyzed whether nearly identical policy pollution exclusions are ambiguous. In *Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Insurance Co.*, 711 So.2d 1135, 1136–37 (Fla.1998), the court was confronted with determining whether spilled ammonia constituted a "pollutant" for insurance liability reasons. The pollution exclusion of the policy and the included definition of pollutants in *Deni* was nearly identical to the policy exclusion and definition of pollutants in the case before this Court.[4] In *Deni*, the court found that the language of the "pollution exclusion clause is clear and unambiguous." *Id.* at 1138. The court then went on to specifically reject the argument that the policy exclusion should be found to be ambiguous because certain words found in the policy definition for pollutants, namely "irritant" and

---

4. The pollution exclusion in *Deni* excluded liability from coverage "arising out of the actual, alleged or threatened discharge, dispersal, *release or escape* of pollutants." *Deni*, 711 So.2d at 1137 (emphasis added). In the case at bar, the policy pollution exclusion reads, "rising out of the actual, alleged or threatened discharge, dispersal, *seepage, migration, release or escape* of 'pollutants.'" (D.E. # 11) (emphasis added). The definitions of "pollutant" found in the two policies are identical.

"contaminant," were not further defined. *Id.* at 1139. The court emphasized that a plain-language interpretation of the pollution exclusion is required and that "[a]s a court, we cannot place limitations upon the plain language of a policy exclusion simply because we think it should have been written that way." *Id.* The court ultimately found that "[a]pplying the policies' language to the context of the claim here does not produce an uncertain or ambiguous result, but leads only to one reasonable conclusion." *Id.* at 1140.

■ Given the law enunciated in *Deni*, this Court concludes that, in the context of the allegations by Mr. Boone, the pollution exclusion is unambiguous and excludes from coverage the damages claimed by Mr. Boone. Applying the policy's language to the context of the claim here leads the Court to believe that the plain language of the pollution exclusion encompasses the substances at issue.

First, the substances at issue—feces, raw sewage, and battery acid—fall within the policy pollutant definition of "any solid, liquid, gaseous or thermal *irritant or contaminant.*" (D.E. # 11) (emphasis added). In determining whether a substance is an irritant or contaminant, "the court should look to see if the disputed substance is alleged to have had a *particular effect* commonly thought of as 'irritation' or 'contamination.'" *Nova Casualty Co.*, 424 F.Supp.2d at 1334 (*citing Deni*, 711 So.2d at 1139). Here, the underlying complaint alleges that when Mr. Boone was exposed to the substances, he encountered a "dangerous health risk" and a "hazardous condition." (St. Ct. Compl. ¶¶ 8, 10). As a result of his exposure, he suffered "severe dermatological injuries." (St. Ct. Compl. ¶ 11). Such allegations fit the ordinary meaning of an "irritant or contaminant." *See Nova Cas. Co.*, 424 F.Supp.2d at 1334 (finding bacteria to be a contaminant because it "infected the plaintiffs' bodies or made them impure by contact....."); *U.S. Fire Ins. Co. v. City of Warren*, 176 F.Supp.2d 728, 732 (E.D.Mich.2001) (" 'raw sewage is clearly a contaminant' that would be covered by [a pollution] exclusion"); *Deni*, 711 So.2d at 1139 (finding that injuries resulted from ammonia fumes and therefore caused a particular irritating effect to the plaintiff).

Second, the examples expressly included in policy exclusion definition of pollutant even further support that the pollution exclusion was intended to encompass the types of substances alleged in Mr. Boone's complaint. The policy defines "pollutants" not only as "any solid, liquid, gaseous or thermal irritant or contaminant," it continues by offering specific types of substances that can constitute such art "irritant or contaminant." (D.E. # 11). Specifically, the definition of pollutant excludes substances "including *smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.*" (D.E. # 11) (emphasis added). Following a plain meaning interpretation of the Policy language, the Court finds that battery acid qualifies as an "acid" and "raw sewage and feces" is included in the definition of "waste" as "materials to recycled, reconditioned or reclaimed." *Cf. James River Ins. Co.*, 540 F.3d at 1277 (finding construction debris causing methane gas to be an excluded pollutant because it fell under a similar definition of "waste"). The Court concludes that Florida courts, if faced with the same issue, would not put limitations on the interpretation of what constitutes a pollutant under the pollution exclusion. *See, e.g., Deni*, 711 So.2d at 1138 (holding that, where there is no obvious indication that the pollution exclusion should be limited to industrial pollution, it would be inappropriate for the court to read such language into the contract).

Defendants urge this Court to follow other jurisdictions and find that there are genuine issues of material fact as to whether battery acid constitutes "acid" and raw sewage constitutes "waste" under the policy pollution exclusion. Careful review of the cited authority offered by Defendants, when held to the standard set by the Florida Supreme Court in *Deni*, impels a conclusion that the pollution exclusion of this contract applies to bar Defendants' claim. In *Deni*, the court specifically held, "[w]e cannot accept the conclusion reached by certain courts that because of its ambiguity the pollution exclusion clause only excludes environmental or industrial pollution." *Deni*, 711 So.2d at 1138. Many of the cases cited by Defendants as persuasive are based on the exact reasoning expressly contradicted by the Florida Supreme Court. *See, e.g., Regent Ins. Co. v. Holmes*, 835 F.Supp. 579, 582 (D.Kan.1993) (finding that formic acid did not constitute a pollutant under the pollution exclusion because the injury at issue was to "one person and inflicted no discernable injury on the environment"); *U.S. Fidelity & Guar. Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala.1985) (holding that raw sewage did not eliminate insurance coverage because the pollution exclusion was "intended to cover only industrial pollution and contamination."); *Minerva Enters., Inc. v. Bituminous Cas. Corp.*, 312 Ark. 128, 851 S.W.2d 403, 405–06 (1993) (finding the pollution exclusion to at least be ambiguous and that the "interpretation that it was intended for industrial polluters to be a plausible one.").

## IV. CONCLUSION

Because the Court interprets the pollution exclusion of the Policy to unambiguously apply to battery acid, raw sewage, and feces, the Court concludes that Plaintiff has no duty to defend or indemnify Defendants Yachtsman and Moss in the underlying litigation. Accordingly, after a careful review of the record, and the Court being otherwise fully advised it is

**ORDERED, ADJUDGED, and DECREED** that:

1. Plaintiff's Motion for Summary Judgment (**D.E. # 15**) be, and the same is hereby, **GRANTED**.

2. Defendant Moss and Associates Property Management, Inc.'s Motion for Summary Judgment (**D.E. # 12**) be, and the same is hereby, **DENIED**.

3. Oral argument on Parties' Cross–Motions for Summary Judgment set for February 4, 2009 at 1:00 p.m. in Key West, Florida (**D.E. # 8**) is hereby **CANCELLED**.

### *FINAL JUDGMENT*

Pursuant to Federal Rule Civil Procedure 58, and in accordance with the reasoning stated in the Court's January 21, 2009 Order Chanting Summary Judgment for Plaintiff (**D.E. # 25**), it is **ORDERED, ADJUDGED and DECREED** that declaratory judgment is entered in favor of Plaintiff Philadelphia Indemnity Insurance Company and against Defendants Yachtsman's Inn Condo Association, Inc. and Moss & Associates Property Management, Inc. All pending motions are **DENIED as MOOT**. The Clerk of Court shall **CLOSE** this case.