Robert N. Scola, Jr., United States District Judge
Philadelphia Indemnity Insurance Company filed this action seeking a declaration that an insurance policy it issued to Florida Memorial University does not afford coverage for damages claimed, in state court, by FMU student Aaliyah Edmond. FMU, of course, disagrees, countering the policy does in fact support coverage. According to FMU, either the plain text of the policy requires coverage or, if multiple reasonable interpretations are possible, the Court should adopt FMU's interpretation over the Insurance Company's. FMU also argues that even if one aspect of Edmond's claim is not covered, because of an exclusion, another aspect is and therefore the Insurance Company's duty to defend extends to Edmond's entire claim. The Court finds FMU's position misses the mark and thus grants the Insurance Company's motion for summary judgment (ECF No. 49 ) and denies FMU's (ECF No. 48 ).
1. Background
The parties do not dispute the salient facts underlying this coverage dispute. Edmond, the plaintiff in the underlying state case against FMU, was a member of FMU's dance team. (Def.'s Stmt. of Undisputed Facts ("Def.'s Stmt.") ¶ 1, ECF No. 48, 2.) The complaint alleges the dance team was managed and organized by FMU. (Edmond's State Compl. ¶ 6, ECF No. 32-1, 2.) While under the supervision of an assistant dance-team coach, Edmond says that she, along with her team, attempted to execute a new stunt during a practice session on October 7, 2015, in preparation for an upcoming dance show. (Def.'s Stmt. ¶¶ 1-3.) In practicing the new stunt, Edmond's teammate failed to catch her and she hit her back and head on the bare tile floor of the practice room. (Id. at ¶ 5.) The coach, according to Edmond, directed her to sit down but did not otherwise instruct her to seek medical care even though she was experiencing concussive symptoms. (Id. at ¶ 6.) The next day, Edmond continued to experience concussive symptoms which she reported to FMU's trainer's office. (Id. at ¶ 7-8.) The trainer, however, determined she was fine. (Id. at ¶ 8.) Nonetheless, when Edmond followed up with a neurologist a few days later, she was diagnosed with a grade three concussion which was determined to be a result of the head trauma sustained during practice on October 7th. (Id. at ¶ 9.)
Edmond ultimately sued FMU, alleging the school had been negligent in a number of ways: (a) negligent supervision of the dance team; (b) failing to provide a proper practice room; (c) failing to provide safety mats; (d) introducing a dangerous stunt to an inexperienced dance team; (e) failing to assign spotters for dancers attempting the stunts; (f) failing to implement or follow a proper concussion protocol; (g) failing to provide medical care despite the presence of concussion-like symptoms; (h) failure of the coach to report Edmond's injury; and (i) failure of the trainer to provide proper medical care when Edmond presented with concussion-like symptoms the day after the incident. (Id. at 10.)
*1346 At all relevant times, FMU was insured by a liability policy issued by the Insurance Company. This policy afforded coverage for FMU's liability for "bodily injury," subject to certain limitations and exclusions. One of those exclusions was added by an endorsement, "Form CG2101," which the Court will refer to as the "Sponsorship Exclusion." Under this endorsement, coverage was excluded for: " 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition ... sponsor[ed]" by the school. (Policy, ECF No. 32-2, 81.)
Another endorsement, "Form CG2271," was also added to the policy. Under this endorsement, which the Court will refer to as the "No-Supervision Exclusion," coverage for " 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition" was excluded "if there is no direct management, organization or supervision of such sports or athletic contest or exhibition by any insured." (Id. at 88.)
Finally, relevant to the instant dispute, the policy also contained an endorsement titled "General Liability Deluxe Endorsement: Schools." (Id. at 92-100.) This endorsement expanded the definition of "Insured" to include coverage for liability triggered by athletic trainers while acting within the scope of their duties for FMU.
Although the Insurance Company has assigned counsel to defend FMU in the underlying state action, while reserving its rights, it now seeks a declaration that coverage is not afforded under the policy and that the Insurance Company does not, therefore, have a duty to defend or indemnify.
2. Legal Standard
Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." Hickson Corp. v. N. Crossarm Co. , 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Id. at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co. , 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ; Jackson v. BellSouth Telecomms. , 372 F.3d 1250, 1280 (11th Cir. 2004). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." Bannum, Inc. v. City of Fort Lauderdale , 901 F.2d 989, 996 (11th Cir. 1990).
Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, documents, depositions, answers to interrogatories, admissions, or other materials, and designate specific facts showing that there is a genuine issue for trial. Celotex , 477 U.S. at 323-24, 106 S.Ct. 2548 ; Fed. R. Civ. P. 56(c)(1)(A). The nonmovant's evidence must be significantly probative to support the claims. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court will not weigh the evidence or make findings of fact. Id. at 249, 106 S.Ct. 2505 ;
*1347 Morrison v. Amway Corp. , 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. Morrison , 323 F.3d at 924.
3. The Policy does not afford coverage to Edmond's claims.
A. Edmond's claims are excluded by the plain language of the policy.
"The construction of insurance contracts is governed by substantive state law"-here, Florida law. Provau v. State Farm Mut. Auto. Ins. Co. , 772 F.2d 817, 819 (11th Cir. 1985). As has been long held in Florida, "insurance contracts must be construed in accordance with the plain language of the policy." Swire Pac. Holdings, Inc. v. Zurich Ins. Co. , 845 So.2d 161, 165 (Fla. 2003). Notwithstanding, "when construing an insurance policy to determine coverage the pertinent provisions should be read in pari materia." U.S. Fire Ins. Co. v. J.S.U.B., Inc. , 979 So.2d 871, 877 (Fla. 2007). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co. , 913 So.2d 528, 532 (Fla. 2005). It is only "when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction," that such an ambiguity will be construed in favor of coverage. Taurus , 913 So.2d at 532 (emphasis added).
In Florida, in determining an insurer's duty to defend, a court must look no further than "the allegations contained within the four corners of the complaint in the underlying action against the insured." Philadelphia Indem. Ins. Co. v. Yachtman's Inn Condo Ass'n, Inc. , 595 F.Supp.2d 1319, 1322 (S.D. Fla. 2009) (King, J.); Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co. , 227 F.Supp.2d 1248, 1258 (M.D. Fla. 2002) (even where " 'actual facts' developed in the discovery process or otherwise show that there is potential coverage under the insurance policy, the duty to defend is still not triggered"); Chicago Title Ins. Co. v. CV Reit, Inc. , 588 So.2d 1075, 1076 (Fla. 4th DCA 1991) ("conclusions drawn by the insured based upon a theory of liability which has not been pled" do not trigger coverage).
On the other hand, "[w]here the complaint against the insured alleges any facts which actually, or even potentially, fall within the scope of coverage under the policy, the insurer is obligated to defend the entire suit." Yachtman's Inn , 595 F.Supp.2d at 1322. Conversely, "an insurer is relieved of its duty to defend if the alleged facts and legal theories do not fall within a policy's coverage." Wackenhut Servs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania , 15 F.Supp.2d 1314, 1321 (S.D. Fla. 1998) (King, J.). Also, because "the duty to defend is much broader than the duty to indemnify," "a court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify." Yachtman's Inn , 595 F.Supp.2d at 1322.
Here, the Sponsorship Exclusion unambiguously bars coverage for Edmond's underlying state claims. As a starting point, FMU itself agrees that this provision, at least when considered in isolation, "may prevent coverage as Ms. Edmond sustained bodily injury while in dance practice on the premises of FMU for an upcoming dance show." (Def.'s Mot. at 10.) FMU's argument, instead, is that the Sponsorship Exclusion is rendered unenforceable by what it describes as the wholly contradictory provision set forth in the No-Supervision Exclusion. (Def.'s Reply and Opposition, ECF No. 54, 9-11.) To the contrary, however, the Court finds no *1348 conflict or inconsistency between these two provisions.
Instead, the Court concludes that these two endorsements serve different functions. The first, the Sponsorship Exclusion, bars coverage for injuries suffered by participants in school-sponsored events. (Policy, ECF No. 32-2, 81 (excluding coverage for " 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition ... sponsor[ed]" by the school).) In contrast, the No-Supervision Exclusion excludes coverage for injuries that arise where there was no control by the school over an athletic event taking place on its grounds. (Id. at 88 (excluding coverage for " 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition if there is no direct management, organization or supervision of such sports or athletic contest or exhibition by any insured").) In order for the Insurance Company to exclude coverage for injuries suffered by participants in official, school-sanctioned events as well as in unofficial or more casual games or contests, not sponsored or organized by the school (for example, a pick-up basketball game on school property or an event wholly organized and run by an outside vendor), both endorsements are necessary. Despite FMU's protestations, the Court finds these two provisions do not create any ambiguities in the policy as a whole. Just because coverage would not be barred under the No-Supervision Exclusion (because the assistant coach was clearly supervising Edmond's practice), it does not follow that coverage cannot be otherwise barred by virtue of the Sponsorship Exclusion.
Further, contrary to FMU's argument, nor does the Deluxe Endorsement-which FMU says expands coverage for an athletic trainer acting within the scope of his or her duties in response to a medical incident (Def.'s Mot. at 14)-support coverage in the face of the Sponsorship Exclusion. The Sponsorship Exclusion applies broadly, excluding coverage for injuries suffered during sponsored events; the Deluxe Endorsement merely expands the definition of an insured. This expanded definition, however, is inapplicable where coverage is barred by reason of the overarching exclusion. See Underwriters Safety & Claims, Inc. v. Travelers Prop. Cas. Co. of Am. , 661 Fed.Appx. 325, 327 (6th Cir. 2016) (holding that a policy's sports-participant exclusion trumps its medical-malpractice extension and noting that "[w]hile the Endorsement broadens the policy's definition of 'bodily injury,' the Exclusion applies to the amended insurance policy as a whole").
B. Edmond's claims for FMU's negligence following her fall are inseparable from her initial injuries.
FMU, in its response to the Insurance Company's motion for summary judgment, argues that, even if there is no coverage for the negligence alleged on the day of Edmond's fall, coverage lies for FMU's negligence in relation to its failure to address Edmond's concussion the next day. Those allegations relate to FMU's failure to follow a proper concussion protocol and failing to provide medical care the following day despite Edmond's concussion-like symptoms. According to FMU, the alleged post-incident negligence claims are (1) covered under the policy's Deluxe Endorsement and (2) are not barred from coverage by the Sponsorship Exclusion. The Court is not persuaded that FMU is right.
To begin with, FMU has not cited any legal authority to support its position. Next, the Court agrees with the Insurance Company that Edmond's claims relating to FMU's negligence in dealing with her concussion *1349 the following day "are not separate and distinct claims." (Pl.'s Reply, ECF No. 56, 7.) Instead, the damages associated with these claims arise from the same bodily injuries Edmond sustained during the practice session with her coach and dance team the day before. See Nat'l Fire & Marine Ins. Co. v. Adoreable Promotions, Inc. , 451 F.Supp.2d 1301, 1310 (M.D. Fla. 2006) (holding that, under a similar policy, a boxer's claim for negligent failure to provide medical care after a boxing match was excluded from coverage because those damages were dependent on bodily injury he sustained that was itself excluded from coverage). The Court finds these post-incident claims are not independent or separable claims. That is, "but for [the] bodily injuries sustained ... while participating in [the excluded event], these so-called 'independent' claims would not have arisen at all." Id. ; see also, Gateway Hotel Holdings, Inc. v. Lexington Ins. Co. , 275 S.W.3d 268, 283 (Mo. Ct. App. 2008) (holding that because a boxer's participation in an excluded boxing match was "an essential element" of his claim for negligent medical care, the medical negligence was not "an independent and distinct cause of" his injuries); W. Heritage Ins. Co. v. Montana , 30 F.Supp.3d 1366, 1377 (M.D. Fla. 2014), aff'd , 623 Fed.Appx. 525 (11th Cir. 2015) (holding that a policy's sublimit for bodily injury claims arising out of assault and battery claims also applied to claims alleging negligent failure to render aid). Coverage for all of Edmond's claims is thus barred by the Sponsorship Exclusion.
4. Conclusion
The parties here have filed cross motions for summary judgment. A party claiming coverage "generally bears the burden of proof to establish that coverage exists." St. Paul Fire & Marine Ins. Co. v. Sea Quest Int'l, Inc. , 676 F.Supp.2d 1306, 1313 (M.D. Fla. 2009), aff'd , 403 Fed.Appx. 471 (11th Cir. 2010). Conversely, "[i]t follows that the insurer then bears the burden of establishing the applicability of a policy exclusion seeking to bar coverage." Id. Here, the Insurance Company has carried its burden while FMU has not. The Court thus denies FMU's motion for summary judgment (ECF No. 48 ) and grants the Insurance's Company's motion (ECF No. 49 ). There is no coverage under the policy at issue in this case for the claims asserted by Edmonds against FMU in the underlying state-court action. The Insurance Company is therefore not liable for either the defense or indemnity of FMU in the underlying action.
The Clerk shall close this case. Any other pending motions are denied as moot. The calendar call set for June 5, 2018 and the trial set for the trial period beginning June 11, 2018 are hereby canceled .
Done and ordered , at Miami, Florida, on April 6, 2018.