[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11427

Non-Argument Calendar

_____

THE DIAZ FRITZ GROUP, INC.,
d.b.a. Diaz Fritz Isabel,

                                        Plaintiff-Appellant,

*versus*

WESTFIELD INSURANCE COMPANY,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cv-00785-VMC-AAS

_____

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

General contractor, the Diaz Fritz Group, Inc., appeals the district court's grant of summary judgment in favor of Westfield Insurance Company—which acted as Diaz Fritz's general liability insurer between January 1, 2009 and January 1, 2010—on its breach of contract claim. Diaz Fritz raises two primary issues. First, it argues that the district court erroneously concluded that, under Florida law and the plain language of the insurance policy, Westfield had no duty to defend Diaz Fritz against affirmative defenses or contractual counterclaims raised by Diaz Fritz's subcontractor, Hayward Baker, Inc. ("HBI"), in a separate action initiated by Diaz Fritz. Second, Diaz Fritz claims that the district court erred by holding that, absent a duty to defend, Westfield also had no duty to indemnify Diaz Fritz in its lawsuit against HBI. After review, we affirm.

## I. BACKGROUND

Diaz Fritz, a general contractor in the state of Florida, purchased a general liability insurance policy from Westfield for the period between January 1, 2009 and January 1, 2010. Under the policy, Westfield agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Likewise, the parties agreed that Westfield "will have the right and duty to

defend the insured against any 'suit' seeking those damages . . . ." The policy further provided that it: "applies to . . . 'property damage' only if . . . [t]he . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory;'" and "[t]he . . . 'property damage' occurs during the policy period . . . ."

Pursuant to the policy, an "occurrence" meant "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" referred to "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or . . . . Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." More importantly to this appeal, the policy defined a "suit" as "a civil proceeding in which damages because of 'bodily injury', or 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged," including "[a]n arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or "[a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent."

In May 2009, Diaz Fritz was engaged in contracting work at the University Community Hospital Carrollwood ("the hospital" or "UCH"). The firm enlisted HBI's assistance as a subcontractor to perform foundation work at UCH. Diaz Fritz agreed to pay HBI

$290,000 to complete the project. But work at the hospital went awry, and, according to Diaz Fritz, HBI negligently caused some of the hospital's other property to flood, incurring substantial damage.

The hospital promptly sent Diaz Fritz a letter demanding that it immediately remediate the damage, which jeopardized "patient and employee safety." Given the nature of UCH's operations, it insisted that time was "of the essence" and gave Diaz Fritz three days to comply. In addition to withholding all payments due to Diaz Fritz, the hospital also threatened that it would "look to [Diaz Fritz] for any and all costs incurred" after the three days lapsed.

Diaz Fritz reached out to Westfield, but the insurer felt that HBI was responsible for the flooding. Accordingly, it then sent the hospital's property damage claim to Zurich American Insurance Company ("Zurich"), HBI's general liability insurer. But Zurich and Westfield could not agree about whether Zurich's policy with HBI required it to provide coverage to Diaz Fritz as an "additional insured" party. While the two insurers bickered, Diaz Fritz—without seeking approval from Westfield—paid for all of the repairs necessary to restore the hospital's property, albeit without admitting fault. The repairs totaled $505,597.72.

Meanwhile, Diaz Fritz, believing that HBI's negligence caused the hospital's property damage, decided to withhold the $290,000 it had agreed to pay HBI for the project in an effort to recoup the money for the repairs. Even still, Diaz Fritz remained on the hook for over $200,000 of the approximately $506,000 in payments

remitted to UCH. Accordingly, in 2011, it sought to recover its perceived losses from HBI in Florida state court. In its answer, HBI raised multiple affirmative defenses, the third of which—and the only one relevant to this appeal—asserted that Diaz Fritz's negligence contributed to or entirely caused the damage to the hospital.

HBI also filed two counterclaims against Diaz Fritz. First, it argued that Diaz Fritz breached its subcontract by withholding the $290,000 payment for its work on the hospital. Second, it sought to recover the value of its performance *in quantum meruit.*

Diaz Fritz then reached out to Westfield to seek a defense under its general liability policy. Westfield refused, explaining that the policy did not require it to defend against affirmative defenses, and that the counterclaims were outside the scope of coverage. Nevertheless, Diaz Fritz persisted and brought its case against HBI to trial. The jury found HBI partially responsible for a total of $266,596.32 in damages and expenses, and, offsetting that amount against the $290,000 that Diaz Fritz withheld, awarded HBI $23,403.68 in damages.[1]

Diaz Fritz then filed suit against Westfield in state court on March 11, 2020. Diaz Fritz sought a declaratory judgment that Westfield was obligated to defend it in the state court litigation against HBI and to indemnify it against the final judgment in that

---

[1] Nevertheless, the trial court entered final judgment in favor of HBI for a grand total of $361,902.44, including pre-judgment interest.

case; alleged that Westfield breached its contract by denying defense and indemnification of Diaz Fritz in state court; and requested damages for a Florida law bad faith claim. Westfield subsequently removed the case to the United States District Court for the Middle District of Florida and successfully moved to dismiss all of Diaz Fritz's claims excepting breach of contract.

After discovery, both parties moved for summary judgment. Turning first to Westfield's motion, the district court concluded that the insurer's obligations to defend and indemnify were not triggered by Diaz Fritz's suit against HBI. Noting that Florida law controlled the suit and that no Florida court had yet weighed in on whether an affirmative defense can trigger an insurer's duty to defend, the court determined that, at least in the present case, it did not. Though it recognized that HBI's affirmative defense "blamed Diaz Fritz for any purported damage to the hospital," it nevertheless emphasized that "it did not seek any affirmative relief from Diaz Fritz 'because of' this damage," as required to trigger the duty to defend under the policy.

Likewise, the district court found that HBI's counterclaims did not seek reimbursement for property damage, but, instead only to recover economic damages from Diaz Fritz's breach of contract. Because the policy "unambiguously" required damages "because of" property damage, the district court found that HBI's counterclaims fell outside the scope of Diaz Fritz's insurance policy. And, because "the duty to defend is broader than the duty to indemnify," the district court also found that "as a matter of

law," Westfield was not obligated to indemnify Diaz Fritz from the state court's final judgment.[2] Diaz Fritz timely appealed.

## II. STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment, "considering the evidence in the light most favorable to the nonmoving party." *Lindley v. FDIC*, 733 F.3d 1043, 1050 (11th Cir. 2013). Likewise, we review *de novo* a district court's interpretation of an insurance contract. *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 774 (11th Cir. 2000).

## III. ANALYSIS

A. The district court properly granted summary judgment in favor of Westfield as to its duty to defend Diaz Fritz in the latter's suit against HBI.

On appeal, Diaz Fritz argues that the district court erred in granting summary judgment in favor of Westfield and simultaneously denying its own motion for summary judgment. The firm contends that, under Florida law, we should construe the statutory language "in light of the skill and experience of ordinary people," rather than legal scholars. *Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.*, 874 So. 2d 26, 29–30 (Fla. 2d DCA 2004). *See also*

---

[2] Consequently, the district court denied Diaz Fritz's motion for summary judgment.

*Hrynkiw v. Allstate Floridian Ins. Co.*, 844 So. 2d 739, 741-42 (Fla. 5th DCA 2003). Likewise, Diaz Fritz reiterates that where "one reasonable interpretation of the policy provisions would provide coverage, that is the construction which must be adopted." *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 950 (Fla. 2013).

To create a "reasonable" interpretation of the contract that favors an affirmative duty to defend in Diaz Fritz's suit against HBI, Diaz Fritz urges us to focus "on the *substance*" of the affirmative defense, rather than the "*form*." By its logic, because the hospital would have had a "property damage" claim against Diaz Fritz within the plain language of the policy had the firm not settled with the hospital, HBI's affirmative defense—that Diaz Fritz was at least partially responsible for the flooding—litigated the same issue that would have triggered a duty to defend in a suit between Diaz Fritz and the hospital.

But Florida's lodestar interpretive principle undermines Diaz Fritz's argument: "Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 975-76 (Fla. 2017) (quoting *Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013)). Granted "[p]olicy language is considered to be ambiguous . . . if the language 'is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage.'" *Id.* at 976

(quoting *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004)). But "[t]o find in favor of the insured on th[at] basis, however, the policy must actually be ambiguous." *Id.* (quoting *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010) (emphasis omitted)). We may not "put a strained and unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity." *Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc.*, 586 So. 2d 95, 97 (Fla. 5th DC A 1991).

Here, the district court granted Westfield's motion for summary judgment after concluding that the plain and unambiguous policy language covered "suits" for "damages" "because of 'property damage.'" In contrast, it found that HBI's affirmative defense only sought to offset the amount of damages Diaz Fritz claimed it was owed in a contract action. We agree, and find Diaz Fritz's contrary argument unconvincing.[3] Diaz Fritz fails to identify any Florida precedent suggesting that, when construing

---

[3] Although Diaz Fritz urges us to follow *Simon v. Maryland Cas. Co.*, 353 F.2d 608, 610-12 (5th Cir. 1965), as "circuit precedent," it misunderstands how federal courts, sitting in diversity, operate. "In diversity cases, we are required to apply the substantive law of the forum state; here, Florida." *Mesa v. Clarendon Nat'l Ins. Co.*, 799 F.3d 1353, 1358 (11th Cir. 2015). And, "Florida applies its own laws to interpret policies which are purchased and delivered in that state." *Trans Caribbean Lines, Inc. v. Tracor Marine, Inc.*, 748 F.2d 568, 570 (11th Cir. 1984). Consequently, *Simon*, a case involving an insurance contract governed by Texas law, does not control our analysis of a case under Florida law.

an insurance contract, courts should look past plain and unambiguous language to rule in favor of coverage.

Although HBI blamed Diaz Fritz for causing the flood that damaged the hospital, its affirmative defense did not seek "any sums that [Diaz Fritz] [would] become[] legally obligated to pay as damages because of . . . 'property damage'" as required by the policy. Instead, Diaz Fritz sued HBI to recover the amount it had paid voluntarily to the hospital to rectify the flood damage. Consequently, HBI's affirmative defense could only *reduce* the amount of damages sought by Diaz Fritz, rather than entitle it to any amount of compensation. Therefore, there is no reasonable construction under which HBI's third affirmative defense could qualify as a "suit" for "damages."

Diaz Fritz opines that this interpretation "effectively punishes [it] for doing the right thing." Perhaps, but Diaz Fritz agreed to the policy's unambiguous language, which, as we have explained, does not implicate Westfield's duty to defend in this case. Accordingly, we affirm the district court's grant of summary judgment in favor of Westfield.

B. The district court properly granted summary judgment in favor of Westfield as to its duty to indemnify Diaz Fritz after concluding that, as a matter of law, the duty to indemnify is coterminous with the duty to defend.

Finally, because we reject Diaz Fritz's argument that the district court erred in concluding that Westfield was not obligated to defend its suit against HBI, we also reject its claim that the district court erroneously concluded that Westfield was not obligated to indemnify Diaz Fritz in that suit. Under Florida law, "[a]n insurer's duty to defend is distinct from and broader than the duty to indemnify." *Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (quotation omitted). And, as a matter of Florida law and binding Eleventh Circuit precedent, "[a] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify." *Trailer Bridge, Inc. v. Ill. Nat. Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) (quoting *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.*, 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009)).

**AFFIRMED.**