PAUL C. HUCK, UNITED STATES DISTRICT JUDGE
This Cause is before the Court upon Plaintiff Starr Indemnity & Liability Company's ("Starr") Motion for Summary Judgment [D.E. 42], and Defendant Peterbrooke Franchising of America, LLC's ("Peterbrooke"), counter Motion for Summary Judgment. [D.E. 64], which Miami Chocolates, LLC, Charles McDonald, and Judy McDonald's (the "MC Defendants") joined [D.E. 67].
I. Overview
Starr, an insurance company, has filed this declaratory action under 28 U.S.C. § 2201, et seq. , requesting that this Court declare that it has no duty to defend or indemnify the MC Defendants against claims that Peterbrooke brought against them in an underlying lawsuit (the "Underlying Suit").[1] For context, the Underlying Suit involves an action by Peterbrooke against the MC Defendants, former franchisees, alleging that they had continued operating a previously franchised chocolatier shop as if it remained associated with Peterbrooke even after Peterbrooke had terminated their franchise agreement (the "Agreement"). As a result, Peterbrooke asserted the following claims against the *1219 MC Defendants: Count I for trademark infringement in violation of the Lanham Act; Count II for false designations of origin, also in violation the Lanham Act; Count III for trademark infringement in violation of Florida common law; Count IV for common law unfair competition; and Count V[2] (alleged against Miami Chocolates alone) for breach of the Agreement.[3]
The dispute here concerns specifically whether Starr, as the MC Defendants' insurer, must defend and indemnify the MC Defendants against Peterbrooke's abovementioned claims. As to that, Starr contends that each of Peterbrooke's claims in the Underlying Suit is either not covered by or is excluded under the relevant insurance policy (the "Policy").[4] And indeed, at a hearing this Court held on July 2, 2018, Peterbrooke and the MC Defendants conceded that all but Count IV, the unfair competition claim, are subject to applicable Policy exclusions. As to Count IV, Peterbrooke and the MC Defendants raised new arguments at the July 2, 2018 hearing for why it is not subject to the same exclusions that they conceded apply to Counts I, II, III, and V. The Court thus allowed the parties to file supplemental briefs regarding coverage of Count IV.
After considering the parties' supplemental briefs, the briefing related to their cross summary judgement motions, the Policy, and the underlying complaint, the Court holds that Starr's Policy also excludes Count IV and that Starr thus has no duty to defend or indemnify the MC Defendants against any claim in Peterbrooke's Underlying Suit.
II. Factual Background
Whether Starr owes a duty to defend the MC Defendants against Peterbrooke's unfair competition claim depends on (A) what coverage, as well as exclusions from coverage, Starr's Policy provides and (B) what facts Peterbrooke alleged in the Underlying Suit to support its claim. These considerations are addressed in turn.
A. The Policy's Relevant Coverage and Exclusion Provisions
Regarding coverage and the relevant exclusions, the Policy provides:
SECTION II-LIABILITY
A. Coverages
1. Business Liability
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury to which this insurance does not apply...."
...
B. Exclusions
1. Applicable To Business Liability Coverage
This insurance does not apply to:
...
p. Personal And Advertising Injury
"Personal and advertising injury":
*1220 (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";...
(5) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";...
(12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property right. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement". However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.
[D.E. 1-2 at 69, 71, 75-76].
Regarding relevant definitions, the Policy provides:
F. Liability And Medical Expenses Definitions
1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters ...;
14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:...
f. The use of another's advertising idea in your advertisement";
[D.E. 1-2 at 81, 83].
B. Peterbrooke's Underlying Unfair Competition Claim against the MC Defendants
Peterbrooke's underlying unfair competition claim, as does its other four claims, arises from and incorporates the following relevant allegations from its underlying complaint:
15. Pursuant to the Agreement, [Peterbrooke] granted Miami Chocolates a limited license and authority to use and display the Peterbrooke Mark, but only in such manner, and at such locations and times, as were expressly authorized by [Peterbrooke]. In no event was Miami Chocolates or its owners or affiliates authorized to use the Peterbrooke Mark after the termination of its franchise. Such unauthorized use was and is expressly prohibited under the terms of the [Franchise] Agreement.
...
28. Section 19 of the Agreement contains provisions that set forth the rights and obligations of the parties in the event of termination. Specifically, pursuant to Section 19.2, Miami Chocolates and its owners are prohibited from identifying themselves as current or former Peterbrooke franchises, from using any of [Peterbrooke's] trade secrets, promotional materials, the Peterbrooke Mark, or any mark that is confusingly similar. Miami Chocolates and its owners were required, upon termination, to immediately remove or change the signs on the Shop in order to effectively distinguish their premises from its former appearances and from any association with [Peterbrooke]....
...
30. Despite the [above-referenced] post-termination provisions, Defendants continue to hold themselves out to the public as operating a genuine and authorized Peterbrooke Chocolatier Shop by continuing to use the Peterbrooke Mark subsequent to termination of the *1221 Agreement. In so doing, Defendants infringed upon the Peterbrooke Mark and breached their explicit post-termination obligations under the Agreement.
31. Defendants Charles McDonald and Judy McDonald personally and blatantly infringed on Peterbrooke's Marks following the termination of the franchise relationship. In particular, Charles McDonald and Judy McDonald continued to utilize the Peterbrooke Mark and signage and continued to sell products under the Peterbrooke name for several months after the Agreement was terminated.
32. Defendants' post-termination use and display of the Peterbrooke Mark and/or any items associated with the Peterbrooke brand at their former Peterbrooke Shop was without [Peterbrooke]'s license or consent, and has caused and continues to cause mistake, confusion, or deception in the minds of the public as to the source, affiliation, and sponsorship of Defendants' products. Defendants' unlawful use of the Peterbrooke Mark deceives customers into concluding that Defendants' products are made or supplied by [Peterbrooke], were prepared under [Peterbrooke]'s supervision, are sponsored and endorsed by PFA, and bear the Peterbrooke Mark pursuant to [Peterbrooke]'s authority and permission. Such impressions are calculated to, and will have the effect of, misleading customers in their purchasing decisions, thus unfairly capitalizing on [Peterbrooke]'s goodwill, reputation, and appeal.
[D.E. 1-2. at ¶¶ 15, 28, 30-32].
Based on these allegations, Peterbrooke asserted in the Underlying Suit that the MC Defendants' post-termination use of its intellectual property and other items associated with its brand constituted, among other things, common law unfair competition. And here, Peterbrooke and the MC Defendants now contend that underlying unfair competition claim, unlike the other four claims, is covered under Starr's Policy.
III. Discussion
A. Standard of Review
Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56 ; Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of pointing to the part of the record that shows the lack of a genuine issue of material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ; Allen v. Tyson Foods, Inc., 121 F.3d 642, 645 (11th Cir. 1997). Once the moving party does so, the burden then shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. 2548. The court must view the evidence and resolve all inferences in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Additionally, contract interpretation is generally a question of law. Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995). "Questions of fact arise only when an ambiguous contract term forces the court to turn to extrinsic evidence of the parties' intent ... to interpret the disputed term." Id. Here, the parties agree that whether Starr must defend the MC Defendants presents a question of law, properly resolved by summary judgment.
*1222 B. Starr's Duty to Defend the MC Defendants Under the Policy
The general rule for an insurer's duty to defend is that "an insurer has a duty to defend unless (1) all the claims in the underlying suit do not fall within the grant of coverage, or (2) 'the complaint shows the applicability of a policy exclusion' as to all claims within the broad scope of coverage." Id. (quoting Auto-Owners Ins. Co. v. Elite Homes, Inc. , 676 Fed.Appx. 951, 954 (11th Cir. 2017) ). This, of course, requires that the court
start with "the plain language of the policy, as bargained for by the parties." If that language is unambiguous, it governs. If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered "ambiguous," and must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy."
State Farm Fire & Cas. Co. v. Steinberg , 393 F.3d 1226, 1230 (11th Cir. 2004) (quoting Auto-Owners Ins. Co. v. Anderson , 756 So.2d 29, 34 (Fla. 2000) ).
After reviewing the insurance policy, the court "must look to the allegations contained within the four corners of the complaint in the underlying action against the insured." Philadelphia Indem. Ins. Co. v. Yachtman's Inn Condo Ass'n, Inc. , 595 F.Supp.2d 1319, 1322 (S.D. Fla. 2009) (citing Lawyers Title Ins. Corp. v. JDC (America) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995) ). Thus, this Court must determine whether Starr has a duty to defend the MC Defendants "solely from the allegations in the [underlying] complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." State Farm , 393 F.3d at 1230. "If the allegations in the [underlying] complaint state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merits of the lawsuit." Id. The reverse is also true: if the allegations do not warrant coverage, the insurer need not defend regardless of the merits of the underlying lawsuit.
Yet, despite this well established rule, Peterbrooke and the MC Defendants urge the Court to look beyond the pleadings and consider findings made in an omnibus order on motions for summary judgement ("Underlying Order") recently entered in the Underlying Suit.[5] According to Peterbrooke and the MC Defendants, the findings that the court made there would establish coverage for its unfair competition claim here. The Court, however, will not consider facts purportedly established outside of the pleadings.
As a preliminary matter, the Underlying Order that Peterbrooke and the MC Defendants rely on is not a final judgement and, in fact, is currently subject to a pending motion for reconsideration.[6] Moreover, and as noted above, the weight of the relevant case law mandates that, in assessing an insurer's duty to defend, courts should consider only the facts pled in the underlying complaint. Indeed, several cases illustrate this point. For example, in a case where the underlying action had been settled before the insurer's duty to defend had been determined, the Florida Supreme Court explained that there is a
well-established rule [in] this state that the insurer is under a duty to defend a suit against an insured only where the complaint alleges a state of facts within *1223 the coverage of the insurance policy ..., [but not] where the complaint upon its face alleges a state of facts which fails to bring the case within the coverage of the policy. Consequently, the company is not required to defend if it would not be bound to indemnify the insured even though the plaintiff should prevail in his action.
Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc. , 358 So.2d 533, 535 (Fla. 1977) (emphasis added). Accordingly, the Florida Supreme Court ignored certain stipulations made in the underlying settlement agreement that, if considered, may have warranted coverage, and held that "the insurer had no duty to defend" because, as pled, "[t]he original complaint filed ... did not allege facts which would bring the cause within the coverage of the insurance policy...." Id. at 536.
Also relevant here, in a more recent case where an underlying consent judgement had been entered before the insurer's duty to defend had been adjudicated, Judge Ungaro considered only the facts alleged in the underlying complaint-not the consent judgment. Evanston Ins. Co. v. Berlanga , 2012 WL 13012426 (S.D. Fla. Jan. 12, 2012). As Judge Ungaro explained,
In determining whether an insurer owes a duty to defend, the Court looks only to the allegations contained within the four corners of the complaint in the underlying action against the insured. See Lawyers Title Ins. Corp. v. JD [JDC] (America) Corp. , 52 F.3d 1575, 1580 (11th Cir. 1995). As the Eleventh Circuit has explained, "[t]he duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured.... The actual facts of the situation are not pertinent. " Id. Thus, in determining whether Evanston had a duty to defend, the material facts are the allegations in the Underlying Action.
Id. at *4 (holding that, as pled, the allegations in the underlying action were subject to one of the insurance policy's exclusions and thus held that the insurer had no duty to defend). The Eleventh Circuit has consistently followed this rule. See, e.g. , Trailer Bridge, Inc. v. Illinois Nat. Ins. Co. , 657 F.3d 1135, 1141-42 (11th Cir. 2011) ("In Florida, 'the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses.' ... The merits of the underlying suit have no bearing on whether the duty is owed. ") (emphasis added); Mid-Continent Cas. Co. v. Royal Crane, LLC , 169 So.3d 174, 180-81 (4th DCA 2015) ("The insurer's duty to defend arises solely from " 'the facts and legal theories alleged in the pleadings and claims against the insured.' The merits of the underlying suit are irrelevant. " ") (emphasis added); Snyder's-Lance Inc. v. Cowen Truck Line, Inc. , 572 Fed.Appx. 824, 829 (11th Cir. 2014) (Resolving an indemnity dispute under North Carolina law and holding that, "The district court did not err in relying on the allegations of negligence rather than actual findings of negligence, because that was the appropriate way to determine whether the underlying claim, on its face, was within the scope of the indemnity provision.").
Accordingly, in determining whether Starr has a duty to defend the MC Defendants, the Court will consider only the four corners of the Policy and the underlying complaint.
1. The Policy Covers Count IV of Peterbrooke's Underlying Suit
As noted above, Starr's Policy provides Business Liability Coverage for "sums that *1224 the insured becomes legally obligated to pay as damages because of ... 'personal and advertising injury' to which this insurance applies." [D.E. 1-2 at 69]. Thus, to be covered, Peterbrooke's underlying complaint must allege facts establishing a personal and advertising injury. That is considered next.
a. Relevant Policy Definitions
In determining whether Peterbrooke's underlying complaint alleges a personal and advertising injury, the Court must first consider what the Policy deems an advertisement and what it deems a personal and advertising injury. As quoted above, the Policy specifically defines an advertisement as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." [D.E. 1-2 at 81]. The Policy then defines a personal and advertising injury as an "injury ... arising out of ... [t]he use of another's advertising idea in your 'advertisement.' " [D.E. 1-2 at 83]. And lastly, although the Policy does not specifically define what an "advertising idea" is, "the Eleventh Circuit, applying Florida law, has construed the term to mean 'any idea or concept related to the promotion of a product to the public.' " Trailer Bridge , 657 F.3d at 1143 (quoting Hyman v. Nationwide Mut. Fire Ins. Co. , 304 F.3d 1179, 1188 (11th Cir. 2002) ).
b. The Underlying Suit Alleges a Covered Injury
Based on these definitions, the Court concludes that Peterbrooke's unfair competition claim alleges a covered personal and advertising injury under the Policy. To be specific, Peterbrooke alleges that, "pursuant to Section 19.2 [of the Agreement], Miami Chocolates and its owners are prohibited from identifying themselves as current or former Peterbrooke franchises, from using any of Peterbrooke's trade secrets, promotional materials, the Peterbrooke Mark, or any mark that is confusingly similar" after the Agreement is terminated. [D.E. 1-1 at 5 ¶ 28]. Yet, "[d]espite [those] post-termination provisions," the MC Defendants "continu[ed] to hold themselves out to the public as operating a genuine Peterbrooke Chocolatier Shop by continuing to use the Peterbrooke Mark subsequent to termination of the Agreement," id. at ¶ 30, including its use of "the Peterbrooke Mark and signage ...." Id. at ¶ 31 (emphasis added). As a result, the MC Defendants' "post-termination use and display of the Peterbrooke Mark and/or any items associated with the Peterbrooke brand" injured Peterbrooke by "misleading customers in their purchasing decisions, thus unfairly capitalizing on [Peterbrooke]'s goodwill, reputation, and appeal." Id. at ¶ 32 (emphasis added).
These allegations make clear that Peterbrooke's unfair competition claim concerns advertisements -namely, the MC Defendants' post-termination "use" and "display" of Peterbrooke's mark and other items associated with the Peterbrooke brand, including "signage," id. at ¶ 31-that resulted in a personal and advertising injury -namely, the MC Defendants' use of Peterbrooke's mark, brand, and other materials associated with Peterbrooke to "unfairly capitaliz[e] on [Peterbrooke]'s goodwill, reputation, and appeal." Id. at ¶ 32. These allegations therefore trigger the Policy's Business Liability Coverage.
2. Applicable Exclusions Under the Policy Bar Peterbrooke's Unfair Competition Claim
Even though Starr's Policy provides coverage for personal and advertising injuries, Starr contends that Peterbrooke's unfair competition claim is nevertheless subject *1225 to certain Policy exclusions. The Court agrees with Starr.
a. The Infringement Exclusion
The first relevant exclusion applies to personal and advertising injuries "[a]rising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights" (the "Infringement Exclusion"). [D.E. 1-2 at 76]. Notably, the Infringement Exclusion has an arising-out-of clause and, according to "[t]he Florida Supreme Court[,] ... exclusionary provisions containing the phrase 'arising out of' ... require[ ] only some level of causation greater than coincidence." Martinez v. Citizens Property Ins. Corp. , 982 So.2d 57, 59 (Fla. 3d DCA 2008) (quoting Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co. , 913 So.2d 528, 533 (Fla. 2005) ). In other words, "The term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with[,]' ... [and] contemplates a more attenuated link than the phrase 'because of.' " Land's End at Sunset Beach Cmty. Ass'n, Inc. v. Aspen Specialty Ins. Co. , --- Fed.Appx. ----, ----, 2018 WL 3795312, at *4 (11th Cir. Aug. 9, 2018) (quoting Taurus Holdings , 913 So.2d at 539 ). See also Ohio Cas. Ins. Co. v. Cont'l Cas. Co. , 279 F.Supp.2d 1281, 1284 (S.D. Fla. 2003). Accordingly, given the breadth of this exclusion-particularly in light of its arising-out-of clause-and the factual basis upon which Peterbrooke's underlying claims rest, it is clear that the Infringement Exclusion applies.
To be specific, while "[i]t is true that an unfair competition claim could be broader than a trademark infringement claim[ ] ..., the Court must look to the allegations ... to determine if ... [the allegations concerning] unfair competition are broader than trademark infringement." Land's End at Sunset Beach Cmty. Ass'n, Inc. v. Aspen Specialty Ins. Co. , 289 F.Supp.3d 1259, 1263 (M.D. Fla. 2017), aff'd , --- Fed.Appx. ----, 2018 WL 3795312 (11th Cir. Aug. 9, 2018). Indeed, "[t]hat ... [the] unfair competition [ ]claim require[s] elements of proof beyond trademark use and ... may exist absent trademark infringement does not alter the analysis...." Land's End , --- Fed.Appx. at ---- - ----, 2018 WL 3795312, at *4-5. But here, Peterbrooke's unfair competition claim is not broader than an infringement-related claim. In fact, its unfair competition claim-as well as each of Peterbrooke's other four underlying claims-arises out of the MC Defendants' alleged
post-termination use and display of the Peterbrooke Mark and/or any items associated with the Peterbrooke brand ..., [which] has caused and continues to cause mistake, confusion, or deception in the minds of the public as to the source, affiliation, and sponsorship of Defendants' products.... Such impressions are calculated to, and will have the effect of, misleading customers in their purchasing decisions, thus unfairly capitalizing on [Peterbrooke]'s goodwill, reputation, and appeal.
[D.E. 1-2 at ¶ 32].
As the above portion of the underlying complaint makes clear, "[a]ll of the allegations go back to the same premise: the [underlying defendants] infringed on [the underlying plaintiff's] mark." Land's End , 289 F.Supp.3d at 1268. Indeed, the underlying complaint incorporates these exact allegations into Counts I, II, III, and V-all of which Peterbrooke and the MC Defendants conceded at the July 2, 2018 hearing are barred by the Infringement Exclusion because they all rest on allegations concerning intellectual-property-related infringements. "Accordingly, the allegations of ... unfair competition are *1226 excluded of coverage as [a] claim[ ] 'arising out of the infringement of ... trademark.' " Id. at ----, at *5. See also Power Corp. v. Amerisure Ins. Co. , 2013 WL 4523490, at *6 (M.D. Fla. Aug. 26, 2013) (holding that a federal false advertising claim was excluded under an identical infringement-related exclusion because it arose out of an alleged trademark infringement).
As a result, Starr has no duty to defend the MC Defendants. In addition, because Starr has no duty to defend the MC Defendants, Starr also has no duty to indemnify them. See Philadelphia Indem. , 595 F.Supp.2d at 1322 (S.D. Fla. 2009) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify."); see also Essex Ins. Co. v. Big Top of Tampa, Inc. , 53 So.3d 1220 (Fla. 2d DCA 2011).
b. The Breach Exclusion
In addition to the Infringement Exclusion, the Policy excludes advertising injuries "[a]rising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement' " (the "Breach Exclusion"). Thus, any cause of action "incident to or having a connection with" an allegation that the MC Defendants' wrongful actions violated the terms of the Agreement falls within the Breach Exclusion. See Ohio Cas. , 279 F.Supp.2d at 1284. And here, each of Peterbrooke's underlying claims-including its unfair competition claim-rests on that premise.
For example, Paragraph 30 of the underlying complaint-which is incorporated in Peterbrooke's unfair competition claim-alleges that, "[d]espite the post-termination provisions, Defendants continue to hold themselves out to the public as operating a genuine and authorized Peterbrooke Chocolatier Shop by continuing to use the Peterbrooke Mark subsequent to termination of the Agreement. In so doing, Defendants infringed upon the Peterbrooke Mark and breached their explicit post-termination obligations under the Agreement. " [D.E. 1-1 at 6 ¶ 30 (emphasis added) ]. Therefore, as a result of such "post-termination use and display of the Peterbrooke Mark and/or any items associated with the Peterbrooke brand," id. at ¶ 32, Peterbrooke alleged that the MC Defendants violated, among other things, Florida's unfair competition law.
As the above-quoted portions of the underlying complaint show, each of the wrongs Peterbrooke complained about ultimately arose out of the MC Defendants' use of items associated with the Peterbrooke brand in a manner that was prohibited by the Agreement. Thus, no matter which legal theory Peterbrooke proceeded under, each claim-including its unfair competition claim-was ultimately based on conduct that arose out of Peterbrooke's breach of the Agreement. As a result, the Breach Exclusion also applies to each of Peterbrooke's underlying claims.
c. The Intentional Violation of Rights Exclusion
Lastly, the Policy contains a third exclusion for any "personal and advertising injury" that is "[c]aused by or at the direction of the insured with the knowledge the act would violate the rights of another and would inflict [a] 'personal and advertising injury.' " [D.E. 1-2 at 75]. However, because the Infringement and Breach Exclusions establish that Starr has no duty do defend, the Court need not address whether this third, potentially applicable Policy exclusion would exclude coverage as well.
IV. Conclusion
Although Peterbrooke and the MC Defendants are correct that Starr's Policy provides coverage for Peterbrooke's unfair *1227 competition claim in the Underlying Suit, the Policy has at least two exclusions that apply to the unfair competition claim. Starr thus owes no duty to defend or indemnify the MC Defendants.
Accordingly, the Court GRANTS Starr's Motion for Summary Judgment [D.E. 42] and DENIES Peterbrooke's Motion for Summary Judgment [D.E. 64].

As the MC Defendants' insurer, Starr defended them against Peterbrooke's underlying claims, but did so while reserving its rights to later challenge its contractual duty to defend and indemnify the MC Defendants. [D.E. 1-3].

Note that the underlying complaint lists two Count IVs. The Court here refers to the second, which asserts a claim for breach of contract, as Count V.

16-CV-20417, D.E. 63.

Policy number 1000361781151. The Policy has an effective policy period of June 18, 2015, to June 18, 2016.

Case No. 16-cv-20417, D.E. 202.

Id. D.E. 203.